Félix Banuchi, demandante y apelante, *v.* El Distrito de Riego conocido por Servicio de Riego de Isabela, demandado y apelado.

No. 5795.—*Sometido:* Enero 12, 1932. *Resuelto:* Julio 12, 1932.

*Juan B. Soto,* abogado del apelante; *Attorney General James R. Beverley, Tomás Torres Pérez, Subprocurador,* y *Antonio Piñero,* abogado del Riego, abogados del apelado.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Se trata de una demanda sobre daños y perjuicios entablada por Félix Banuchi contra el Distrito de Riego conocido por Servicio de Riego de Isabela.

El demandante alegó que era dueño de dos fincas rústicas habiéndose incluído en el distrito provisional de riego una porción de 47 acres de una de ellas y la totalidad, 12 cuerdas, de la otra, según se le informó por el propio distrito en agosto y octubre de 1928; que el 16 de diciembre de 1928 y el 9 de enero de 1929 comenzó a darse agua por el distrito para el riego de dichas parcelas, continuando hasta el 26 de junio de 1929 en que "el demandante fué notificado por el demandado que desde dicho día sería suspendido por tiempo indefinido el suministro del agua"; "que en la notificación . . . se informaba al demandante que tan pronto como las condiciones lo permitieran, le sería servida nuevamente el agua cuyo suministro se suspendía"; "que dicha agua . . . no le ha sido suministrada ni entregada al demandante en ningún momento después . . . habiendo quedado las referidas parcelas privadas del servicio del riego, sin el consentimiento y contra la voluntad del demandante"; que al ser notificado, ya tenía el demandante sembradas de cañas de azúcar 21 cuerdas de la primera parcela y la totalidad de la segunda, produciendo èl cosecho $7,040.25 menos de lo que habría producido si el riego hubiera continuado; que como consecuencia de la suspensión se vió obligado el demandante a vender sus fincas a la Central Cambalache por $6,000 menos de lo que hubiera podido obtener, causándosele así $13,040.25 de daños y perjuicios, que el demandante pide a la corte que ordene al demandado que le pague, con costas.

Emplazado el demandado, excepcionó la demanda alegando que no aducía hechos suficientes para determinar una causa de acción. Oídas ambas partes, la corte declaró con lugar la excepción. Pidió el demandante que se dictara sentencia y así lo hizo la corte, interponiendo entonces el demandante el presente recurso de apelación.

La sentencia de la corte se basa en una razonada resolución que en parte dice:

"La teoría del demandante consiste en afirmar que una acción

por daños existe en contra de un distrito de riego si dejare de suplir el agua a que tiene derecho una persona en el distrito.

"'An action for damages will also lie against an irrigation district for the failure to supply water to which one within the district is entitled.' Kinney on Irrigation and Water Rights, Vol. 3, p. 3066.

"La teoría del demandado consiste en afirmar (1) que el demandado en este caso es una corporación pública; (2) que no existe en la Ley del Riego obligación contractual alguna entre el Servicio del Riego y los regantes; (3) que la acción ejercitada en este caso es 'in tort'; y, (4) que debe establecerse en la demanda como un hecho esencial y necesario, el derecho del demandante a recibir el servicio del agua y que en este caso el demandante no tiene a su favor derecho alguno para exigir del demandado la entrega del agua, puesto que sus tierras no han sido incluídas en el territorio de regadío, ni tampoco hasta la fecha en que dejó de servírsele el agua había pagado cuota alguna ni tenía que pagarla tampoco, ya que estaba en el período de prueba, por lo que no se había establecido a su favor derecho alguno que implicara un deber por parte del demandado a servirle el agua.

"Ambas partes convienen en que la acción que se ejercita no es una acción *ex-contractu* y sí una acción *in tort*, por lo que no es necesario, a los efectos de esta resolución, determinar si existe o no en la ley del riego obligación contractual entre el servicio del riego y los regantes."

Examina la corte las leyes 59 y 63 de 1919 (págs. 321 y 349) creadoras del Distrito de Riego y sus enmiendas posteriores y concluye que la demandada es una corporación de servicio público. Cita a 7 R.C.L. 40, 14 C. J. 72, Long on Irrigation, 531–533, L.R.A., 1918 B, págs. 1010, 1012, en apoyo de su conclusión, y continúa así:

"Siendo el demandado una corporación pública, ¿es responsable de daños y perjuicios derivados de la omisión de dejar de suplir a los regantes agua para sus tierras incluídas en el distrito de regadío? Veamos lo que a este respecto establece la jurisprudencia.

"'Injuries from defects or torts.—A county is not liable for a defect or want of efficiency in the plan of a drain, established pursuant to statute; neither is it liable for the negligence or failure of the contractor to whom the work of construction is let to perform such work in accordance with the plan adopted. Nor is a county or a drainage district liable in damages for injuries caused by the tor-

tious acts of its officers, but the remedy is against them personally; although the trustees, under whose control and supervision the district is, may be enjoined if they act without authority or willfully or maliciously.'—14 Cyc, 1057.—Hensley v. Reclamation Dist. No. 556 (121 Cal. 96). Cita además 9 Cal. Jur. 75; 19 C. J. 709–10; San Francisco Savings Union v. Reclamation Dist., 144 Cal. 639, y L.R.A. 1918 B, 1011–1012.

"La teoría sostenida en los casos que comenta la precedente nota de que un distrito de riego no es responsable por daños a menos que así lo disponga la ley, no ha sido seguida por todas las cortes de la Unión. En muchos casos se ha resuelto lo contrario, pues si bien se admite que tales distritos tienen el carácter de corporaciones cuasi públicas, en realidad no son agencias gubernamentales y no están, por tanto, exentos de responsabilidad. Véase Lawyers' Reports, Annotated 1918 B, p. 1014–1015."

Después de otras citas de jurisprudencia, prosigue la corte de distrito:

"Para determinar la responsabilidad de un distrito de riego debe consultarse el estatuto que le ha dado vida. No aparece en la Ley número 63 de 1919, proveyendo para la construcción del Riego Público de Isabela y Aguadilla, ni en sus enmiendas posteriores, disposición alguna reconociendo a un regante el derecho de demandar daños y perjuicios del servicio del riego por dejarle de suplir agua para sus tierras comprendidas en el distrito de regadío. El remedio que tiene el dueño o al arrendatario de tales terrenos si se considera perjudicado con la negativa del Comisionado del Interior por abastecimiento de agua, se encuentra claramente establecido en el artículo 34 de dicha Ley, el cual copiado en lo atinente a esta cuestión, es como sigue:

" 'Art. 34.— . . . *disponiéndose, sin embargo,* que nada de lo contenido en esta Ley impedirá la debida distribución del agua por rotación entre los diversos predios de terreno por cualquier canal o lateral, y si algún dueño o arrendatario de tal terreno se considera perjudicado por la negativa del Comisionado del Interior de Puerto Rico sobre abastecimiento de agua, tal dueño o arrendatario podrá entablar una acción en la corte de distrito del distrito en que radicaren los mencionados terrenos para obligar al Comisionado del Interior de Puerto Rico a dejar entrar el agua al terreno; *disponiéndose, además,* que si se entablase una acción por un arrendatario de cualquier terreno o cualesquiera terrenos, según se dispone en este párrafo, el dueño del terreno o de los terrenos no quedará obligado por el fallo

de dicha corte a menos que hubiere sido parte en el pleito; pero podrá hacérsele parte en dicho pleito, bien por el demandante o por el demandado, ya fuere a moción propia suya, del referido arrendatario, o de El Pueblo de Puerto Rico; *y disponiéndose, también,* que en caso que la corte falle en favor del demandante, el Comisionado del Interior de Puerto Rico inmediatamente abrirá el agua al recibir la notificación de dicha corte'; . . .

"Resumiendo y para terminar, la Corte, del estudio de las cuestiones levantadas por ambas partes, ha llegado a las siguientes conclusiones: que los terrenos del demandante no habían sido incluídos en el distrito permanente del riego; que no se había pagado cuota alguna por el demandante a la fecha en que se suspendió la entrega de agua, debido a que se estaba en el período de prueba; que la acción ejercitada por el demandante no es una acción *ex-contractu;* que de la demanda no aparecen hechos que puedan determinar una acción *in tort;* que en este caso no se ha seguido la acción que expresa y taxativamente establece la ley sobre la materia contenida en el artículo 34 parcialmente transcrito; que de haberse seguido esta acción en ley hubiera el demandante conseguido su objeto inmediato, caso, desde luego, de que venciera en juicio; que el demandado es una corporación pública y que como tal, en un caso como el que venimos considerando, a la luz de la jurisprudencia, el distrito de riego de Isabela no es responsable de daños y perjuicios por suspender el suministro de agua a un regante, especialmente bajo las alegaciones de la presente demanda, ya que analizada la jurisprudencia en relación con nuestra ley encontramos que es de más aplicación la de las cortes de aquellos estados que han resuelto que un distrito de riego no es responsable de daños y perjuicios a menos que así lo provea el estatuto.

"En virtud de las anteriores consideraciones, la Corte estima que debe declarar, como declara, con lugar la excepción previa opuesta a la demanda, sin especial condenación de costas."

En su alegato la parte apelante señala la comisión de cuatro errores, así:

"1. La Corte de Distrito del Distrito Judicial de Aguadilla, cometió error al resolver que los terrenos del demandante no habían sido incluídos en el distrito permanente de regadío.

"2. La susodicha Corte cometió error al declarar que la demanda no aduce hechos suficientes para constituir una causa de acción.

"3. La susodicha Corte cometió error al resolver que el demandante no ha seguido la acción que la Ley autoriza.

"4. La sobre dicha Corte cometió error al resolver que el Distrito demandado no puede ser demandado."

Procederemos a estudiar conjuntamente los tres últimos errores, limitándonos a decir con respecto al primero que no existe porque la corte de distrito estuvo enteramente justificada al sostener, a virtud de las propias alegaciones de la demanda, que las parcelas del demandante no habían sido incluídas en el distrito permanente de riego. La propia ley determina que dicho distrito se establecerá en 1932.

Después de un cuidadoso examen de todas las cuestiones envueltas a la luz de la ley y la jurisprudencia citada por las partes, nos inclinamos a resolver que un distrito de riego como el que aquí se trata es una corporación que participa de una naturaleza dual. Es pública con respecto a sus funciones de tal naturaleza, pero debe considerarse como privada en relación con los derechos privados de los terratenientes del distrito. Como dijo el Juez Mac Lane de Idaho, citado en Long on Irrigation, 531–533,

"Un distrito de regadío es una corporación cuasi pública, organizada con fines comerciales para el beneficio particular de los dueños de las tierras que se hallan dentro de sus límites. Estos son los miembros de la corporación, tienen el dominio de la misma y son los únicos beneficiados por su explotación. La corporación es, en lo que a la administración del negocio se refiere, dueña del sistema como propietaria más bien que en su carácter público, y como propietaria debe asumir y afrontar las cargas."

Siendo ello así, nos inclinamos a decidir que dicho distrito de Riego no está exento de ser demandado por daños y perjuicios, además del recurso que autoriza la propia ley No. 63 de 1919 en su sección 34.

Partiendo de esas conclusiones ¿alega la demanda hechos suficientes para determinar la causa de acción ejercitada? A nuestro juicio la pregunta debe contestarse en la negativa.

De Ruling Case Law tomamos lo que sigue:

"Se ha dicho que en el derecho común existía una causa de acción siempre que una persona ocasionaba daños a otra voluntaria o intencionalmente, sin justa causa o pretexto, y es de general conocimiento el dicho de que dondequiera que existe un daño existe un remedio. Sin embargo, esta regla tiene por miras que el daño sea sufrido por el acto ilegal de un tercero, y si no hubo daño en el sentido legal de la palabra, aunque haya habido perjuicio no existe causa de acción, por ser *damnum absque injuria*. En su sentido legal significa daños resultantes de un acto ilegal. El hecho de que un caso sea nuevo no es óbice para que se obtenga una indemnización, siempre que el mismo pueda hacerse caer dentro de las reglas generales de derecho aplicables a actos torticeros. La piedra de toque para determinar si existe responsabilidad por un acto torticero es la cuestión de si el demandado al actuar o al dejar de actuar ha hecho caso omiso de su deber. De igual modo el ejercicio en debida forma de un derecho no puede constituir un daño en el sentido legal de la palabra que dé lugar a una causa de acción. Los tres principales acápites de la palabra deber con que se confronta la ley sobre actos torticeros, a saber: abstenerse de causar voluntariamente daño a otro, respetar la propiedad de los demás, y usar debida diligencia a fin de evitar perjudicar a otros, son todos de naturaleza comprensiva. Los actos que dan lugar a una acción de daños y perjuicios pueden ser clasificados como sigue: (1) los actos realizados intencional y voluntariamente, sin excusa legal o sin justificación y con la intención expresa o tácita de ocasionar daño; (2) la comisión de determinado perjuicio, o la omisión de dar cumplimiento a un deber especial o absoluto que, por sí solo, constituye una invasión de los derechos de otro o la infracción de una obligación para con un tercero, que estaba exento de culpa, o un acto realizado u omitido en violación de un estatuto positivo que puede haber resultado perjudicial a alguien, de conformidad con las disposiciones del estatuto, que sin culpa alguna contribuyera materialmente al perjuicio; no habiendo en uno u otro caso la intención o la esperanza por parte del demandado de que resultara perjuicio de tal acto u omisión; (3) la realización de un acto perjudicial, o su omisión con el propósito de perjudicar sin invadir ningún derecho claro o absoluto de otro ni infringir ningún derecho positivo u obligación especial o absoluta; pero que ejerciendo debida diligencia y circunspección pudo haber sido prevista y evitada y la persona que haya sufrido la lesión puede ser una hacia quien el demandado tenía en el momento del accidente cierta obligación condicional o limitada." 26 R.C.L. 757, 758.

En la demanda no se alegan los términos precisos bajo los cuales el demandado se obligó a servir el agua. Sólo se dice que dejó de servirla "sin el consentimiento y contra la voluntad del demandante". No se imputa al demandado ningún acto ilegal, ninguna intención dañosa. Por el contrario, surge de la demanda y de la ley que se estaba sirviendo agua dentro de un distrito provisional, que se avisó la suspensión del servicio con la promesa de ser renovado tan pronto como las condiciones lo permitieran y que el demandante nada estaba pagando aún por el agua que recibía.

*Por esos motivos, debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*

El Juez Asociado Señor Córdova Dávila no intervino.

### EN MOCION DE RECONSIDERACION
#### Julio 29, 1932.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

■ Se ha presentado en este caso una moción solicitando la reconsideración de la sentencia que esta corte dictara el 12 de julio actual, bien dejando sin efecto dicha sentencia, ya adicionándola permitiendo al demandante enmendar su demanda de acuerdo con la opinión.

Hemos estudiado la moción y no creemos que deba accederse a la primera petición, pero sí a la segunda.

Los fundamentos en que basa su segunda súplica el apelante en resumen se formulan así:

"(*a*) Porque si el demandante pidió que se dictara sentencia en vez de optar por enmendar su demanda, ello se debió a que la sentencia de la corte de distrito impedía toda enmienda a la demanda, ya que resolvía, como uno de sus fundamentos, que el demandado no es responsable de daños, por ser una corporación pública; lo que hacía inútil toda enmienda.

"(*b*) Porque esta Hon. Corte ha resuelto en su sentencia, según los términos de la opinión, que el referido Distrito puede ser demandado en una acción por daños y perjuicios; lo que hace enmendable la demanda.

"(c) Porque ello es de plena justicia, y no perjudica ningún derecho."

Basta examinarlos en relación con lo dicho por esta corte en la opinión que sirvió de base a su sentencia, para concluir que debe accederse a lo pedido.

En tal virtud se dictará una orden en el sentido de que el caso se devuelve a la corte de distrito de su origen para ulteriores procedimientos no inconsistentes con esta opinión y con la en que se funda la sentencia de julio doce.