FÉLIX BANUCHI, demandante y apelante, *v.* EL DISTRITO DE RIEGO, ETC., demandado y apelado.

Núm. 7109.—*Sometido:* Diciembre 10, 1936. *Resuelto:* Noviembre 30, 1937.

*Juan B. Soto, Juan F. Soto* y *Enrique Igaravídez,* abogados del apelante; *Hon. Procurador General B. Fernández García* y *T. Torres Pérez, Subprocurador,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

Félix Banuchi demandó en daños y perjuicios a la entidad conocida como "Sistema de Riego de Isabela," que es un sistema de regadío para un área limitada en la parte Noroeste de esta Isla. Banuchi alegó primeramente que el demandado convino en suministrar agua a ciertas parcelas de sus tierras, designadas en los libros del demandado como No. 2–A y 12, y a incluirlas en su llamado distrito provisional de riego. De los términos y condiciones del supuesto convenio, los más importantes eran substancialmente los siguientes:

(*a*) Ambas parcelas serían incluídas en el distrito provisional de riego y recibirían agua a determinado precio por un número limitado de días consecutivos dentro de cada quincena, comenzando en diciembre de 1928 y enero de 1929, respectivamente.

(b) El demandado igualmente convino en incluir las parcelas en su distrito provisional de riego mientras éste existiera, y en que si por alguna razón una o ambas parcelas fuesen excluídas del referido distrito, se les suministraría a las tierras el agua necesaria para su regadío hasta la recolección de la cosecha bajo cultivo al tiempo de efectuarse la exclusión.

(c) En consideración a lo cual el demandante convino en que al expirar el primer año de tal servicio, él comenzaría a pagar las primas requeridas a tenor de los términos de la Ley Núm. 63 de 19 de julio de 1919 (Leyes de 1919, pág. 349) según fué enmendada.

El demandante alegó además que el 26 de junio de 1929, y aproximadamente seis meses después de haber comenzado a funcionar el servicio de riego, éste fué repentina e intencionalmente suspendido y sus tierras quedaron privadas de los beneficios del agua hasta entonces suministrada a las mismas, reduciéndose el producto neto de la caña de azúcar entonces bajo cultivo en $7,040.25. Banuchi también adujo que debido a la susodicha suspensión de las facilidades de regadío se vió precisado a vender las tierras el 6 de marzo de 1930 a la Central Cambalache por $6,000 menos de los que hubiera recibido por las mismas de haber continuado disfrutando de los beneficios del sistema del demandado. Por tal motivo reclamó daños y perjuicios por la cantidad total de $13,040.25.

El demandado contestó negando las referidas alegaciones y especialmente la existencia de convenio alguno, oral o escrito, en el sentido de suministrar agua a las tierras del demandante o de incluirlas en su distrito provisional de riego. Alegó afirmativamente que todo lo efectuado en relación con el servicio de riego de las parcelas del demandante se hizo exclusivamente en cumplimiento y conforme a las disposiciones de las secciones 11, 33, y 34 de la Ley núm. 63 supra. También alegó que la suspensión del servicio se verificó en mayo y no en junio de 1929; que en abril de 1929 notificó al demandante que la cantidad de agua que le sería suministrada en el futuro era incierta debido a las dificultades que se ofrecían para llevar el agua a sus tierras; que el 1929 fué

el primer año en que funcionó el servicio en su totalidad y que surgieron muchas dificultades; que el 1929 fué un año muy seco, por lo que el demandado se vió obligado a reducir el suministro de agua a otras personas en un 50 por ciento; que la suspensión del servicio se efectuó debido a hechos fuera del dominio del demandado y a la gran cantidad de agua que se perdía al ser servida al demandante; que el demandante nunca pudo haber recibido como beneficio del sistema el valor que alega haber perdido, porque el sistema nunca aumenta la producción del terreno a tal extremo en el año inicial de su uso, lo cual se desprende del clamor de los terratenientes para que se redujesen las primas; que la cantidad de $6,000 que se alega haber sido perdida en la venta de las tierras no es tal pérdida porque el demandante vendió con una ganancia de $140 por cuerda, y además porque el aumento en valor de los terrenos sitos dentro del Distrito de Regadío no es el resultado de los esfuerzos del dueño hasta que éste ha contribuído con cierta proporción del costo del sistema mediante el pago de primas. Como materia nueva y de defensa el demandado alegó que la suspensión del servicio de riego pudo y debió haber sido revisada de acuerdo con la sección 34 de la Ley núm. 63 de 1919.

Substancialmente la corte inferior llegó a la conclusión de que el demandado había notificado al demandante allá para fines de 1928 de que las dos parcelas en cuestión habían sido incluídas en el distrito provisional de riego creado por la Ley núm. 63 de 1919, supra; que, a partir de determinadas fechas, las mismas serían abastecidas con agua para fines de regadío; que el demandante Banuchi, con motivo de dicha notificación, procedió a preparar sus tierras para el cultivo de caña de azúcar y en realidad sembró unas 34 cuerdas o sea aproximadamente la mitad de su extensión total; que por 4 ó 5 meses se suministró el agua y fué luego suspendida por la gran pérdida en que se incurría por razón de las filtraciones a través de las paredes del canal que conducía el agua a las tierras del demandante; que estas filtraciones se

debían principalmente a la negligencia por parte de los ingenieros y empleados del demandado y debieron haberse evitado o reparado antes de notificar al demandante que su propiedad participaría de los privilegios del regadío. La responsabilidad del demandado fué basada por la corte sentenciadora en la obligación cuasi contractual que surge de su oferta de suministrar agua y en el perjuicio sufrido por el demandante al confiar en ella. Dijo la corte inferior:

"Se ha probado fuera de toda duda, que el demandante con motivo de la notificación del *demandado de que a partir del 16 de diciembre de 1928 y 9 de enero de 1929 (fechas en que comenzaría a suministrarse agua) comenzó a preparar sus terrenos, sembró cañas e incurrió en gastos, y de ahí en adelante nació su derecho a que se le sirviera agua y la obligación del demandado a suministrarla.*"

La corte *a quo* decidió que Banuchi debió haber ejercitado en primer término el derecho de revisión concedídole por la sección 34 de la Ley (núm. 63 de 1919) y que los daños y perjuicios deben limitarse a los que habría sufrido si se hubiera aprovechado de ese remedio oportunamente. La corte decidió, sin embargo, que la evidencia que tuvo ante sí en cuanto a los daños y perjuicios cubría un campo demasiado vasto, y por lo tanto declaró sin lugar la demanda, sin perjuicio del derecho del demandante para incoar otro pleito e introducir evidencia en apoyo del mismo solamente en cuanto a los daños y perjuicios que la corte estimó reclamables.

La apelada sostiene que el no haberse hecho uso del remedio provisto por la ley especial anula el derecho del demandante a los daños y perjuicios que hubiere sufrido. El apelante, en su señalamiento de errores, que ascienden a cuatro, impugna las conclusiones de la corte inferior en el sentido de (1) que el demandante debió haber ejercitado el remedio concedido por la sección 34 de la Ley núm. 63 supra, tal como fué enmendada; (2) que el demandante solamente puede reclamar aquellos daños que habría sufrido si hubiera hecho uso de ese derecho; (3) que el demandante tiene que

incoar otra acción y limitar su prueba a los daños y perjuicios señalados en el error precedente; y (4) que la demanda debe declararse sin lugar.

■ La parte pertinente de la sección 34 supra, lee como sigue:

". . . *Disponiéndose, sin embargo,* que nada de lo contenido en esta Ley impedirá la debida distribución del agua por rotación entre los diversos predios de terreno por cualquier canal o lateral, y si algún dueño o arrendatario de tal terreno se considera perjudicado por la negativa del Comisionado del Interior de Puerto Rico sobre abastecimiento de agua, tal dueño o arrendatario podrá entablar una acción en la corte de distrito del distrito en que radicaren los mencionados terrenos para obligar al Comisionado del Interior de Puerto Rico a dejar entrar el agua al terreno;..."

Opinamos que el remedio de cumplimiento específico concedido por la sección transcrita no es exclusivo y que el demandante puede incoar una acción de daños y perjuicios, si la conclusión de la corte sentenciadora en cuanto a su causa de acción es correcta. Además, no estamos conformes en que se limiten en modo alguno los daños y perjuicios únicamente por no haberse ejercitado el procedimiento especial.

■ En lo que a la cuestión de la causa de acción se refiere nos inclinamos a convenir con la corte inferior. Considerando la ley envuelta (núm. 63 de 1919) y analizando la situación que surgió como resultado de la oferta del demandado de suministrar agua para regadío, recayó un deber cuasi contractual sobre el demandado de cumplir su oferta hasta que se recolectara la cosecha sembrada descansándose en tal oferta. No tenemos base adecuada para desvirtuar la conclusión de la corte inferior que imputó negligencia al demandado en la preparación y construcción del canal que llevaba el agua a las tierras del demandante.

■ Bajo estas circunstancias, todo lo que resta por decidir es la cantidad de daños y perjuicios a ser concedidos. Aparece de la evidencia que la caña bajo cultivo era caña de gran cultura y por consiguiente era una cosecha de ca-

ñas muy bien cultivadas. Igualmente se desprende de los autos que aunque el agua fué suspendida en abril o mayo de 1929 (en junio según el demandante), Banuchi no interpuso ningún procedimiento formal, legal o de otra naturaleza, hasta febrero de 1930, cuando radicó una reclamación de daños y perjuicios ante el Comisionado del Interior. La cuestión a determinar, por lo tanto, es la base sobre la cual se han de computar los daños materiales. Somos del criterio que el demandante tiene derecho a la diferencia entre el valor neto de la caña tal como fué cosechada en el año 1929–30 y el valor neto de esa caña calculado sobre la base de que hubiera sido regada desde mayo o junio hasta su corte. Cualesquiera otros daños y perjuicios deben ser descartados por ser demasiado remotos.

La siguiente evidencia existente en los autos permite a este tribunal hacer por sí mismo la concesión de daños y perjuicios, obviándose de este modo una demora adicional:

Ramón Añeses, Alcalde de Isabela en el 1929 y miembro de la Comisión del Riego; Ramón Banuchi, Secretario de la Comisión del Riego en 1929; y Félix Banuchi, el demandante; todos con una vasta experiencia en el cultivo de caña de azúcar, declararon que la diferencia en el tonelaje de la caña del demandante, debido a la falta de regadío en 1929, fué alrededor de 28 toneladas por cuerda. El demandante declaró que a él le pagaba la Central Cambalache $5.44 por tonelada. La evidencia es clara en el sentido de que él solamente tenía 33 cuerdas sembradas y sujetas al riego, lo cual deja la pérdida estimada en 924 toneladas y su valor bruto en $5,026.56. De estos cálculos hay que deducir, o tomar en consideración, los gastos en que el demandante habría incurrido en el corte, transporte, y quizá hasta cierto punto, cultivo del tonelaje que dejó de obtener. De hecho no tuvo que invertir dinero alguno para tales fines.

Una lectura de los autos nos convence de que Banuchi perdió por lo menos $1,000, mas no tenemos forma alguna

para determinar, por falta de datos, una suma considerable en exceso de ésta.

*Por tanto, debe revocarse la sentencia apelada y dictarse otra en favor del demandante concediéndole la suma de $1,000.*

Los Jueces Presidente Señor del Toro y Asociado Señor Córdova Dávila no intervinieron.