GILBERTO QUINTERO JIMÉNEZ, demandante y apelante, *v.* SERVICIO DE RIEGO DE ISABELA, demandado y apelado.

Núm. 9339.—*Sometido:* Noviembre 14, 1946. *Resuelto:* Febrero 24, 1947.

*Néstor A. Rodríguez Escudero,* abogado del apelante; *Hon. Procurador General Interino Luis Negrón Fernández* (*E. Campos del Toro, ex Procurador General,* en el alegato.), y *J. B. Fernández Badillo, Procurador General Auxiliar,* abogados del apelado.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Este es un pleito sobre daños y perjuicios dirigido contra el Servicio de Riego de Isabela. Como causa de acción sustancialmente se alega: Que el demandante es dueño de una finca de 15 cuerdas de tierra radicada en el barrio Montaña de Aguadilla, por cuyo lado norte pasa un canal perteneciente al Servicio de Riego de Isabela; que ese canal se desborda con frecuencia inundando gran parte de la finca del demandante, habiéndole causado daños que estima en la cantidad de $825; que dichos daños han sido causados única y exclusivamente por la culpa y negligencia del Servicio de Riego de Isabela, sus agentes o empleados, por haber descuidado indebidamente el canal y no haber tomado las medidas necesarias para evitar tales inundaciones, no obstante los repetidos requerimientos y protestas del demandante.

El Comisionado del Interior compareció en el pleito a nombre y en representación del Servicio de Riego y presentó una moción para desestimar la demanda. Fundó su moción en falta de jurisdicción y en que la demanda no aduce hechos constitutivos de causa de acción.

La resolución declarando con lugar la moción para desestimar está predicada en la doctrina enunciada por este Tribunal en el caso de *Banuchi* v. *Distrito de Riego,* 43 D.P.R.

784. La corte inferior interpretó dicha decisión en el sentido de que resuelve que el Distrito de Riego de Isabela es una corporación dual que participa de la naturaleza de pública en ciertos casos y de privada en otros, y que si bien puede ser demandada en daños y perjuicios en una acción *ex contractu*, no puede serlo en acciones *ex delicto* y que siendo la acción aquí establecida de esta última naturaleza, el Distrito de Riego no puede ser demandado. Otro fundamento expuesto por la corte inferior, aunque inconsistente con lo resuelto en. *Banuchi* v. *Distrito de Riego,* supra, fué que el Distrito de Riego de Isabela no es una corporación pública, sino una agencia del Gobierno de Puerto Rico que no puede ser demandada sin el consentimiento del soberano y que éste no lo ha prestado en ningún momento.

El apelante basa su recurso en no haberse seguido los casos de *Banuchi* v. *Distrito de Riego de Isabela,* 43 D.P.R. 784 y 52 D.P.R. 364, así como en no haberse dado aplicación a la Resolución Conjunta núm. 38 de 11 de mayo de 1937.(¹)

Lo que en verdad dijo este Tribunal en el primer caso de *Banuchi* fué que el Distrito de Riego de Isabela es una corporación que participa de una naturaleza dual; que además del recurso que autoriza la propia Ley núm. 63 de 1919 (pág. 349), en su sección 34,(²) es responsable en daños cuando actúa en su capacidad corporativa, pero no lo es cuando actúa en su capacidad gubernativa. Y en lo que respecta al caso que tuvo ante sí, resolvió que aunque la de-

---

(¹) La Resolución Conjunta núm. 38 de 11 de mayo de 1937 (Leyes de 1936-37, pág. 616) fué vaciada en la Ley núm. 130 de 6 de mayo de 1938 (pág. 282).

(²) La sección 34, en lo pertinente, prescribe:

"... . *Disponiéndose, sin embargo,* que nada de lo contenido en esta Ley impedirá la debida distribución del agua por rotación entre los diversos predios de terreno por cualquier canal o lateral, y si algún dueño o arrendatario de tal terreno se considera perjudicado por la negativa del Comisionado del Interior de Puerto Rico sobre abastecimiento de agua, tal dueño o arrendatario podrá entablar una acción en la corte de distrito del distrito en que radicaren los mencionados terrenos para obligar al Comisionado del Interior de Puerto Rico a dejar entrar el agua al terreno; ... ."

manda no aducía hechos constitutivos de causa de acción, era susceptible de enmienda y devolvió el caso para ulteriores procedimientos. No resolvió este Tribunal en aquel caso, como pretenden la corte *a quo* y el apelado, que el Sistema de Riego no fuese responsable por daños y perjuicios derivados de acciones ex delicto.

En el segundo caso de *Banuchi* se trataba de una reclamación de daños y perjuicios instada por un terrateniente cuyos terrenos habían sido incluídos en el distrito provisional de riego. Alegó allí el demandante que el Servicio de Riego de Isabela le prometió suministrarle agua para regadío; que confiado en la promesa sembró de caña una parcela de 34 cuerdas; que después de estarle suministrando agua por algún tiempo, el demandado le suspendió el servicio de agua; que con ese motivo tuvo pérdidas porque la producción fué menor que la que hubiera tenido si hubiera disfrutado del servicio de agua hasta que la caña fué cortada; que además perdió cierta cantidad que alega, al vender la finca a la Central Cambalache, porque el precio de venta fué menor del que hubiera obtenido el demandante si la finca hubiera tenido servicio de riego. La corte de distrito decidió que Banuchi debió haber ejercitado, en primer término, la acción concedídale por la sección 34 de la Ley núm. 63 de 19 de junio de 1919, y que los daños y perjuicios deben limitarse a los que habría sufrido si se hubiera aprovechado de ese remedio oportunamente. Declaró sin lugar la demanda, sin perjuicio del derecho del demandante para incoar otro pleito e introducir evidencia en apoyo del mismo, solamente en cuanto a los daños y perjuicios que la corte estimó reclamables. Este Tribunal aceptó sin discutir que el Distrito de Riego puede ser demandado en daños y perjuicios y que el remedio concedido por la sección 34 antes citada no excluye la acción de daños y perjuicios, conforme se había resuelto en el primer caso de Banuchi. Al revocar la sentencia apelada dictó otra declarando con lugar la demanda y conde-

nando al Distrito de Riego a pagar al demandante la cantidad de $1,000 por concepto de daños.

La decisión en el primer caso de *Banuchi* está predicada en una cita de Long *on Irrigation,* que a su vez fué tomada de la opinión en el caso de *City of Nampa* v. *Nampa & Meridian Irr. Dist.,* 115 Pac. 979, 982, (Idaho, 1911), en el cual, por voz del Juez MacLane, se dijo lo siguiente:

"Un distrito de regadío es una corporación cuasi pública, organizada con fines comerciales para el beneficio particular de los dueños de las tierras que se hallan dentro de sus límites. Estos son los miembros de la corporación, tienen el dominio de la misma y son los únicos beneficiados por su explotación. La corporación es, en lo que a la administración del negocio se refiere, dueña del sistema como propietaria más bien que en su carácter público, y como propietaria debe asumir y afrontar las cargas".

La naturaleza de una institución jurídica no depende del nombre que se le haya dado, sino de sus características expresadas en la ley de su creación. Por consiguiente, precisa en todo caso examinar y comparar los dos estatutos, el de Idaho a que hemos hecho referencia y el de Puerto Rico, para determinar si ambos distritos de riego tienen similares características.

Si examinamos el estatuto de Idaho veremos que el art. 2444 y siguientes del Código Político establecen los requisitos que deben cumplirse para la creación de un distrito de riego. Empieza en la sección 2444 diciendo que cinco o más habitantes y propietarios de cualquier parte de un condado, pueden organizarse en un distrito de riego; que una vez organizado el distrito, tendrá éste el derecho de demandar y ser demandado, no a nombre del estado de Idaho, sino del de la junta de comisionados del distrito; tendrá sucesión perpetua y adoptará y usará un sello; que los comisionados del distrito tendrán facultad y el deber de administrar los asuntos y negocios del distrito, concertar y cumplir todos los contratos que fueren necesarios, nombrar los agentes, oficiales y

empleados que pudieran necesitarse, fijar sus deberes y ejecutar cualesquiera otras acciones que en lo sucesivo pudieran prescribirse por ley.

Parece claro que un distrito de riego organizado bajo el estatuto de Idaho es una corporación pública, que como las de su clase, pueden ser demandadas por sus actos realizados en sus funciones corporativas.

En cambio, la Ley núm. 63 de 19 de junio de 1919, creando el Distrito de Riego de Isabela, no da facultades al Distrito para demandar ni ser demandado; no lo autoriza para adoptar y usar un sello ni tiene sucesión perpetua, facultades éstas que caracterizan a las corporaciones, ya sean públicas o privadas. Por el contrario, una vez organizado el Servicio de Riego y determinados los terrenos que han de quedar comprendidos en el Distrito de Regadío, desaparece la Comisión de Riego por disposición de la ley y son el Comisionado del Interior y el Ingeniero Jefe los que tienen la administración y supervisión del Distrito de Riego. Es el Comisionado del Interior, de acuerdo con la sección 36, quien, con la aprobación del Consejo Ejecutivo, fija las condiciones y precio del agua para abastecer a los municipios y a las empresas manufactureras e industriales. Los dineros del Distrito de Riego ingresan en el Tesoro de Puerto Rico en el "Fondo del Riego de Isabela". El remedio que concede la sección 34 de la Ley cuando algún dueño o arrendatario de terrenos comprendidos en el Distrito de Riego se considera perjudicado por la negativa del Comisionado del Interior a suministrarle agua, es una acción contra el Comisionado del Interior de Puerto Rico para obligarle a dejar pasar el agua al terreno del demandante.

Las circunstancias que acabamos de señalar, no dejan duda de que el Distrito de Riego de Isabela no es una corporación, ni pública ni privada, sino El Pueblo de Puerto Rico mismo, actuando en beneficio de los terratenientes que com-

---

(3) Los casos de *Banuchi,* en tanto en cuanto son incompatibles con esta conclusión, deben entenderse revocados.

ponen el distrito.(³)  Siendo ello así, procede determinar ahora si El Pueblo de Puerto Rico ha dado su consentimiento para ser demandado en acciones de esta índole.

■ Por el art. 1 de la Ley núm. 76 de 13 de abril de 1916 (pág. 155), El Pueblo de Puerto Rico expresó su consentimiento para ser demandado por daños y perjuicios basados sobre contratos celebrados después de entrar en vigor dicha ley; y en el art. 4 de la misma, impuso como condición previa para entablar la demanda, que el demandante prestase una fianza satisfactoria a la corte por la suma de $500 para responder de las costas, pudiendo la corte eximir de la prestación de la fianza a los litigantes que demostraren su inhabilidad para prestarla.  Como podrá verse, por la Ley núm. 76 de 1916 antes citada, El Pueblo de Puerto Rico no autorizaba ser demandado en una acción ex delicto de daños y perjuicios como la del presente caso.  Pero, por la Ley núm. 11 de 18 de abril de 1928 (pág. 131), los artículos 1 y 4 de la Ley núm. 76 de 1916 fueron enmendados de tal forma que El Pueblo de Puerto Rico dió su consentimiento para ser demandado en acciones de daños y perjuicios sin limitación alguna, es decir, tanto en lo que se refiere a los derivados de acciones ex contractu, como a los que surgieren de acciones ex delicto. Y el art. 4 también fué enmendado de forma que la cuantía de la fianza que deberá prestar el litigante, será por $2,000 en vez de $500 como antes se exigía.

■ Arguye el apelado que como la acción establecida en este caso es contra El Pueblo de Puerto Rico y éste no es responsable en daños y perjuicios por acción u omisión, a menos que obre por mediación de un agente especial, no siendo los empleados del Servicio de Riego los agentes especiales que contempla el art. 1803 del Código Civil, El Pueblo de Puerto Rico no es responsable de los daños causados por tales empleados.

Por la Ley núm. 130 de 6 de mayo de 1938 antes aludida, enmendatoria de la sección 11 de la Ley núm. 63 de 19 de junio de 1919 que creó el Distrito de Riego de Isabela, El

Pueblo de Puerto Rico autorizó al Comisionado del Interior conjuntamente con el Procurador General para transigir reclamaciones por daños causados por negligencia de los empleados del Servicio del Riego dentro del distrito en que radiquen las obras del Servicio del Riego de Isabela. En la Exposición de Motivos que precede a dicha ley, se dice lo siguiente:

"Por cuanto, de acuerdo con los términos de la expresada sección 11, el Comisionado del Interior carece de autoridad o facultad para transferir [transigir] reclamaciones por daños o perjuicios causados por negligencia de los empleados del Servicio del Riego de Isabela, dentro del distrito en que radican las obras del sistema de riego de Isabela, en todos aquellos casos en que de acuerdo con el juicio del Comisionado del Interior, fuere conveniente, previa investigación efectuada por el Ingeniero Jefe del Servicio del Riego de Isabela, y que examinada por el Attorney General de Puerto Rico *entienda este funcionario que El Pueblo de Puerto Rico es responsable de los daños causados*". (Bastardillas nuestras).

Y la sección 11, según quedó enmendada por dicha ley, en lo pertinente, prescribe:

". . . *Disponiéndose,* que el Comisionado del Interior queda por la presente autorizado y facultado, para cuando a su juicio fuese conveniente, transigir cualquier reclamación que no excediendo de un mil (1,000) dólares se presentare por daños causados a la propiedad o alguna persona por la negligencia de los empleados del Servicio del Riego de Isabela, dentro del distrito en que radican las obras del Servicio del Riego, después de investigación debidamente practicada por el Ingeniero Jefe del Servicio del Riego de Isabela y de opinión afirmativa emitida por el Attorney General de Puerto Rico; *Disponiéndose,* que toda reclamación que sea satisfecha de acuerdo con la autorización que se confiere al Comisionado del Interior será satisfecha de los propios fondos del Servicio del Riego de Isabela".

Debemos presumir que cuando se aprobó la ley que acabamos de transcribir, la Legislatura tenía conocimiento de que El Pueblo de Puerto Rico sólo es responsable de daños y perjuicios por negligencia cuando éstos fueren causados por el agente especial que contempla el art. 1803 del Código Civil. Sin embargo, la Ley núm. 130 de 6 de mayo de 1938

autorizó al Comisionado del Interior para transigir reclamaciones por daños y perjuicios causados por negligencia de los empleados del Servicio de Riego de Isabela, dentro del distrito donde radiquen las obras del Servicio de Riego, en aquellos casos en que, a juicio del Comisionado, fuere *conveniente* y el Attorney General entendiere que El Pueblo de Puerto Rico *es responsable* de los daños causados. De suerte que para que pueda tener lugar la transacción, se requiere, no solamente que los daños fueren causados por negligencia de los empleados del Riego dentro del distrito donde radiquen las obras, sino que también, a juicio del Comisionado, la transacción fuere *conveniente* y a juicio del Attorney General, El Pueblo de Puerto Rico fuere *responsable de los daños causados.* Si de conformidad con el art. 1803 del Código Civil, El Pueblo de Puerto Rico sólo es responsable en daños y perjuicios cuando éstos son causados por un agente especial, no siendo los empleados del Riego agentes especiales de El Pueblo de Puerto Rico, ¿cómo podría el Comisionado del Interior creer que era conveniente para El Pueblo de Puerto Rico transigir, si de conformidad con el citado artículo El Pueblo de Puerto Rico no sería responsable de tales daños? ¿En qué podía consistir entonces la conveniencia de la transacción? ¿Y en qué autoridad legal podría basarse el Procurador General para opinar que El Pueblo de Puerto Rico era responsable de los daños causados por tales empleados, a menos que, de acuerdo con dicha ley, debiera entenderse que El Pueblo de Puerto Rico había aceptado responsabilidad por los daños causados por ellos? Una interpretación contraria conduciría al absurdo de concluir que la Legislatura de Puerto Rico, al aprobar la ley en cuestión, hizo una obra inútil, pues en ningún caso podría celebrarse la transacción, a menos que se entendiera que El Pueblo de Puerto Rico se hacía responsable por los daños causados por la negligencia de tales empleados.

De lo expuesto resulta que la acción que pueda tener el demandante es contra El Pueblo de Puerto Rico y no contra

el Servicio del Riego de Isabela y que habiendo El Pueblo de Puerto Rico asumido responsabilidad por los daños causados por los empleados del Sistema de Riego en las condiciones antes dichas, no es de aplicación la doctrina del agente especial enunciada en el art. 1803 del Código Civil ni tampoco lo son los casos de *Ortiz* v. *Pueblo,* 44 D.P.R. 153 y *Soto* v. *Lucchetti,* 58 D.P.R. 713.

Pero en los dos casos de *Banuchi* antes citados, este Tribunal resolvió que el Servicio del Riego de Isabela era una entidad jurídica con capacidad para ser demandada y mientras esas decisiones no fueran revocadas, su doctrina era obligatoria para los tribunales inferiores. El demandante se ajustó, al presentar su pleito, a lo que hasta ahora se entendía que era la ley en esta jurisdicción y no dirigió su demanda contra El Pueblo de Puerto Rico, sino contra la entidad que, de acuerdo con dichas decisiones, era la responsable de tales daños. Si nos limitásemos a confirmar la sentencia y el demandante radicase ahora demanda contra El Pueblo de Puerto Rico, como la demanda del pleito que nos ocupa se radicó el 13 de junio de 1945, podría oponerse con éxito la prescripción, y de ese modo nuestra sentencia resultaría cruel e injusta para el demandante, sin ningún beneficio justo para el demandado. Por consiguiente, en bien de la justicia, *procede dejar sin efecto la sentencia apelada y devolver el caso a la corte inferior con instrucciones de que conceda al demandante un plazo de quince días para que, si lo estima conveniente, radique demanda contra El Pueblo de Puerto Rico. Cf. A. Cuesta & Cía., Sucrs.* v. *Sancho Bonet, Tes.,* 54 D.P.R. 87.