Autoridad Sobre Hogares de la Capital de Puerto Rico, demandante y apelada, *v.* William A. Hutton, John Doe y Richard Roe, demandados y apelante el primero.

Núm. 8391.—*Sometido:* Abril 9, 1942. *Resuelto:* Mayo 21, 1942.

*E. H. F. Dottin,* abogado del apelante; *James R. Beverley, R. Castro Fernández* y *José López Baralt,* abogados de la apelada.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Este recurso se estableció contra la sentencia que ordenó la expropiación de una parcela de terreno compuesta de 11,494.29 metros cuadrados, previa indemnización de su valor en el mercado, que la corte fijó en $68,965.74, o sea a razón de $6 por metro cuadrado.

Al solicitar la revocación de la sentencia, el apelante alega que la corte *a quo* cometió error manifiesto al justipreciar el terreno expropiado a razón de $6 por metro cuadrado y que igualmente erró al imponer las costas al demandado.

En su demanda la demandante valoró el terreno en la cantidad de $4.49 por metro cuadrado, o sea en un total de $51,609.33, mientras el demandado en su contestación alega que su valor es de $229,900, o sea a razón de $20 por metro

cuadrado, reclamando además una indemnización de daños en la cantidad de $100,000.

Existiendo como existe un marcado conflicto en la prueba, precisa determinar si la conclusión a que llegara el juez sentenciador está sostenida por la evidencia. A ese fin nos proponemos hacer una síntesis de la prueba de una y otra parte y expondremos luego los fundamentos que sirvieron de base a las conclusiones a que llegara el juez sentenciador.

Por la parte demandante fueron llamados los testigos Vicente A. Tejera, Gonzalo Diago, Jorge E. Saldaña, E. W. Rancke y A. W. Fernández.

El primero de dichos testigos, el Sr. Tejera, declaró que es tasador general en el Departamento de Hacienda y que teniendo en cuenta los valores de las demás propiedades radicadas en la misma zona—vendidas en Puerta de Tierra en las mismas condiciones en que se halla la propiedad del demandado y existiendo en la actualidad en dicho sitio un arrabal de 112 ó 114 casas—valoró el terreno de dicho demandado a razón de $4 el metro cuadrado.

Gonzalo Diago, Presidente de la Autoridad sobre Hogares de la Capital, declaró que los Sres. José P. y Antonio Miranda ofrecieron en venta dichos terrenos al demandado Sr. Hutton a razón de $4 el metro cuadrado; que los terrenos de la sucesión Riera los compró el Pueblo de Puerto Rico a razón de $3.49 por metro cuadrado, vendiéndolos a la Autoridad sobre Hogares de la Capital a razón de $5 por metro cuadrado.

Jorge E. Saldaña tasó los terrenos en cuestión a razón de $4.20⅓ por metro cuadrado, informando además que el Sr. Cloy vendió a la West India Oil Co., hace como año y medio, terrenos en la misma zona a razón de $5.05 por metro cuadrado, y que en el Paseo de Covadonga, por donde está la planta de hielo del Sr. Llamas, la sucesión de Eduardo Crosas y el Banco Comercial de Puerto Rico habían vendido, alrededor de la fecha en que se celebró el juicio en este caso,

que lo fué el 28 de noviembre de 1940, a razón de $8 el metro cuadrado, estando entonces pendiente de firmarse las escrituras; que el Sr. Casals vendió un terreno frente a la calle San Agustín, terreno limpio y seco, a $10 por metro cuadrado, y que la parcela de Hutton no tiene calles de clase alguna.

Los peritos E. W. Rancke y A. W. Fernández valoraron el terreno del demandado en $54,344.22. El Sr. Gilberto Font, Secretario de la Autoridad demandante, lo valoró en $4.50 por metro cuadrado. En el curso de su declaración manifestó el Sr. Font que el relleno del terreno costaría por lo menos a razón de $1.50 por metro cuadrado, y que tendría que pagarse por la adquisición de las casas y por su destrucción, y dársele algún dinero a la gente para que se mudase de las mismas, en total alrededor de $3.40 por metro de superficie; que al Pueblo de Puerto Rico le costó mudar las casas al sur de la Avenida Fernández Juncos, en los terrenos vendidos por la sucesión Riera, un promedio de $3 por metro cuadrado. Declaró también el Sr. Font que en los referidos terrenos precisa construir sobre pilotes de madera, que por unidad de vivienda costarían como $260, o sea a razón de $3.50 por metro cuadrado, y si los pilotes fueran de concreto, costarían de un 15 a 20 por ciento más. Agregó el Sr. Font que los terrenos que compró la West India Oil Co. son altos y secos y fueron vendidos a razón de $5.05.

Por la parte demandada declararon los testigos Bernardino del Corral y el ingeniero José M. Canals.

El primero valoró la parte del terreno que da frente a la Avenida Fernández Juncos a razón de $10 el metro cuadrado y el resto a razón de $5. El segundo, o sea el Sr. Canals, los valoró a razón de $9 por metro, agregando que el relleno del terreno costaría alrededor de $5,000 y que tomaría como ocho mil metros cúbicos de tierra para rellenarlo, a un costo de $0.60 ó $0.65 el metro cúbico.

Después de un ligero análisis de la prueba de una y otra parte, el juez sentenciador se expresó así en su opinión:

"Tuvimos la oportunidad de practicar una inspección ocular en los terrenos del demandado y en los que la demandante compró al Pueblo de Puerto Rico, siendo nuestra conclusión que no existe diferencia de clase alguna entre unos y otros, a excepción de que en los adquiridos por la demandante existen calles que más bien parecen canales venecianos, debido a la cantidad de agua que en las mismas se encuentra estancada. En dicha inspección pudimos observar que todos los terrenos y solares que dan frente a la parcela del demandado están rellenos, completamente secos y se están construyendo en los mismos edificios para fines comerciales.

"De acuerdo con la declaración del Secretario de la demandante, Sr. Font, rellenar los terrenos del demandado para que queden iguales al solar de la Texas Co. (P.R.) Inc., que fué vendido a $9 ó $10 metro cuadrado, y a los otros solares valorados entre $10 y $12 metro cuadrado, costaría $1.50 metro cuadrado, y la compra y destrucción de las casas existentes en los mismos, incluyendo la mudanza de sus habitantes, alrededor de $3.40 metro cuadrado, en total $4.90.

"Los testigos del demandado declararon que los terrenos del mismo tenían un valor promedio entre $9 y $10 metro.cuadrado, y suponiendo que ese fuese el valor del metro cuadrado, tendría la parcela del demandado un valor de $114,940, pero nunca valdría la misma $329,900 (*sic*) como alega el demandado.

"Es un principio reconocido por todos los tribunales que cuando el Estado ejercita su derecho de expropiar la propiedad particular para uso público, debe pagarse al expropiado el precio razonable que los bienes tienen en el mercado, pero ello no autoriza a los propietarios a que, aprovechándose de las necesidades públicas, exijan que el Estado pague por sus propiedades más de lo que las mismas valen. Tan ilegal y arbitrario resultaría que el Estado se apropiase de bienes particulares sin pagar por los mismos su valor razonable, como que pagara por dichos bienes al propietario lo que no valen.

"  *       *       *       *       *       *       *

"*Analizada toda la prueba practicada por las partes* a la luz de la ley y la jurisprudencia aplicables a casos de esta naturaleza, llegamos a la conclusión de que la cantidad de $51,609.33, consignada por la demandante, no es el valor justo y razonable de la parcela del demandado William A. Hutton, y que teniendo en cuenta su situación, dimensiones, el valor de los solares ubicados en la zona donde se encuentra la misma, y los usos a que puede ser destinada por encontrarse en una zona comercial, dicha parcela tiene un valor en el mercado, y lo tenía en febrero del próximo pasado año, de

$68,965.74, o sea, a razón de $6 metro cuadrado, suma que estimamos es una justa compensación e indemnización al demandado por la privación de la misma.''

Como podrá verse por la síntesis que hemos hecho de la prueba de una y otra parte, existe un marcado conflicto, y el juez, que practicó una inspección ocular y que vió y oyó declarar los peritos, estimó que el valor señalado por unos y otros no era exactamente el justo valor del terreno, y llegó a la conclusión de que debía justipreciarlo a razón de $6 el metro cuadrado, o sea algo más del precio que ofreció la demandante y mucho menos de la cantidad exigida por el demandado, que a nuestro juicio es claramente exagerada.

No se nos ha demostrado satisfactoriamente que el juez sentenciador cometiese manifiesto error al justipreciar la propiedad en la forma en que lo hizo, y siendo ello así y no disponiendo nosotros de las oportunidades que él tuviera a los efectos de apreciar las declaraciones de los peritos, no sólo por haberlos oído y visto declarar, si que también por haber practicado una inspección ocular, no vemos cómo podamos declarar que la conclusión a que llegara el juez sentenciador es errónea, y siendo ello así no debemos alterarla.

En cuanto a la segunda cuestión, o sea la relativa al pronunciamiento de costas, habiéndose dictado la sentencia de este caso el 14 de enero de 1941, cuando ya estaba en vigor la enmienda de que fué objeto el artículo 327 del Código de Enjuiciamiento Civil, que hace imperativo en la corte conceder las costas a la parte a cuyo favor se dicte la sentencia, y habida cuenta de que el demandado impugnó el derecho de la demandante a establecer el procedimiento de expropiación, no cabe otra conclusión que su concesión a favor de la demandante se ajusta a derecho.

*Por lo expuesto, procede la confirmación de la sentencia apelada.*

El Juez Asociado Sr. Travieso no intervino.