568

El Pueblo de Puerto Rico, representado por Sergio Cuevas, Comisionado del Interior, demandante y apelado, *v.* Parkhurst Canning Company, Inc., demandada y apelante.

Núm. 8915.—*Sometido:* Noviembre 14, 1944. *Resuelto:* Febrero 15, 1945.

*Dubón & Ochoteco,* abogados de la apelante; *Hon. Procurador General Interino Jesús A. González, Fernando B. Fornaris, Procurador General Auxiliar y Federico Tilén, Asesor Legal del Departamento del Interior* el último, abogados del apelado.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

En esta acción sobre expropiación forzosa radicada por El Pueblo de Puerto Rico contra la Parkhurst Canning Co., Inc., con el fin de adquirir una parcela de terreno de 2.236 cuerdas a ser segregadas de una de mayor cabida propiedad de la demandada sita entre Bayamón y Vega Alta y atravesada por la carretera número dos, el demandante consignó como compensación razonable la suma de $5,118 o sea $1,118 como valor intrínseco del terreno y $4,000 por los daños y perjuicios que se ocasionaban a la demandada. El fin de la expropiación, según se alegó, era verificar el ensanche de la referida carretera. Después de haber dictado: 1ro. la resolución aprobando la declaración de adquisición radicada por el demandante de acuerdo con la Ley número 2 del 1ro. de abril de 1941 y 2do. la orden declarando con lugar la moción de la demandada sobre entrega del dinero depositado

en la corte, sin perjuicio de su derecho a reclamar compensación adicional, la demandada contestó la demanda y celebrado el juicio correspondiente la corte inferior dictó sentencia condenando al demandante a satisfacer a la demandada la cantidad de $3,700 como compensación adicional a las ya satisfechas, más intereses al 6 por ciento sobre dicha suma adicional a contarse los mismos desde la fecha de la adqui-.sición por el demandante.

No conforme la demandada estableció el presente recurso de apelación y en el señalamiento de errores que hace se limita a atacar la apreciación que de la prueba hizo la corte sentenciadora, y que en su consecuencia es insuficiente la cuantía de la indemnización concedida. Solicita la apelante en su alegato que se modifique la sentencia aumentando la indemnización "a aquella cantidad que, conforme a la prueba practicada, represente los verdaderos daños y perjuicios" que ha sufrido.

Nos vemos precisados por tanto a hacer un resumen de la prueba presentada por las partes. La del demandante consistió en las declaraciones de los siguientes testigos:

Cecilio Delgado, Ingeniero Civil y Jefe Auxiliar, encargado de estudio y protección de carreteras, en el Departamento del Interior, quien, en síntesis, declaró que era absolutamente necesario trazar la carretera por los terrenos de la demandada, debido no sólo por la necesidad civil sino por la militar y al costo, la visibilidad, velocidad del tránsito, topografía, y el gran número de casas en las cercanías; que su diseño se hizo con la aprobación de los ingenieros federales en Puerto Rico; que no había ningún otro sitio por donde trazar la carretera.

Angel M. Quintero, Ayudante del Comisionado de Agricultura y Comercio, declaró que durante tres años y medio trabajó como tasador de fincas agrícolas en el Banco Federal; que tasó la finca de la demandada a razón de $500 la cuerda, "tomando en consideración el perjuicio que se le ha-

cía a la finca dividiéndola en dos partes'', así como la fertilidad de la tierra, declarando además que la tasación era de $500 ''porque agrícolamente hablando, pues, no tendría ese precio, tendría un precio inferior''; que asimismo tomaron en consideración que era probable que el Departamento de Sanidad no le permitiría a la demandada tirar los residuos de frutas donde acostumbraba hacerlo anteriormente; que calculó que diez toneladas de desperdicios que tuvieran que transportarse a razón de 40 centavos la tonelada, serían $4 diarios, y trabajando la finca cien días al año, serían cuatrocientos pesos anuales; que tomando como período razonable el término de 10 años, ello equivaldría a una compensación de $4,000; que tomó el término de 10 años por constituir ''el tiempo para cambiar el negocio, cambiar la maquinaria; consideré que ese era tiempo razonable para que ellos terminaran su negocio, si les iba bien o si les iba mal''; pero que no tomó en consideración que en tiempo de lluvia podía anegarse el terreno a ambos lados de la carretera.

HERACLIO RIVERA, Tasador de la Propiedad del Departamento de Hacienda, declaró que el valor de la propiedad había sido tasado en $500 la cuerda, concediendo así ''cierta cantidad que recompensara los posibles daños que se ocasionaren'' en caso que hubiere que transportar los residuos a otra finca; que en una finca una parcela pequeña se tasa mucho más alto que el total de la finca y que a virtud de la adquisición la finca quedaba subdividida; y que el valor de una cuerda en el sitio donde ocurrió la tasación es de $200; en cuanto a los $4,000 en concepto de daños hizo el mismo cálculo que el testigo anterior; que al hacerse la tasación a los fines contributivos no se toma en consideración el valor de la finca en el mercado.

WILLIAM ROSSY, Ingeniero Químico y Jefe de la División de Investigación Industrial en el Departamento de Agricultura y Comercio, declaró que los factores tomados en consideración para tasar en $4,000 la compensación por los daños

y perjuicios que podía sufrir la corporación en sus negocios, eran el coste adicional para transportar los residuos de la finca a un sitio dentro de un radio de cinco kilómetros, siendo la duración del trabajo 25 días laborables en los meses de febrero, marzo, abril y mayo, o sea, cien días al año, a razón de 10 toneladas diarias, lo que rendía un total de $400 al año; que para el cómputo total se recomendó el término de 10 años, en el cual pudiera hacerse uso de dichos productos a través de métodos modernos, o modernizar los procedimientos para descontinuar la transportación de los residuos; que se calculó la producción de la fábrica así como su capacidad normal (50,000 cajas al año, equivalentes a dos mil toneladas de frutas); y los desperdicios se calcularon en un sesenta por ciento.

La prueba documental del demandante demostró que la finca de 12 cuerdas de la demandada está tasada para fines contributivos en $1,500.

La prueba testifical de la demandada consistió en la declaración de las siguientes personas cuyos testimonios damos también en síntesis:

H. E. Knight, Administrador de la Corozal Canning Co., declaró como perito, sobre la producción y procedimiento en el·enlatado de piñas, siendo sus principales declaraciones en el sentido de que en dicho procedimiento se utiliza un treinta y cinco por ciento, botándose un sesenta y cinco por ciento; que los desperdicios hay que botarlos lejos de la carretera porque se fermentan y producen mal olor y atraen moscas; que para esparcir mil toneladas de residuos él utilizó veinticinco cuerdas; que considera que en media cuerda no deben echarse trescientas toneladas; que la cosecha de piña empieza a mediados de febrero y se enlata hasta agosto, o sea, siete meses, como consecuencia de cierto procedimiento moderno para precipitar la madurez de la piña; que es cierto que se está produciendo muy poca piña en la zona de Bayamón.

Román Narváez, dueño de una lechería que colinda con los terrenos de Parkhurst, declaró que al principio le habían molestado en su negocio las moscas y el olor causados por los residuos, pero que tal molestia cesó al cambiarse el sitio de depósito precisamente por donde pasa ahora la carretera; que desde la expropiación los residuos han sido depositados entre las dos carreteras (la nueva y la vieja) donde no le ocasionan molestia.

Norman Parkhurst, Secretario de la Parkhurst Canning Co., declaró que tal corporación (cuyos accionistas eran su padre, su hermano y él) había sido disuelta, pasando la propiedad a su hermano y a él, pero que la fábrica continuaba funcionando; que la producción anual de la fábrica es de un promedio de 50,000 cajas, promedio que exige 3,000 toneladas de fruta, que a su vez rendirían 1,900 toneladas de residuo—el 65 por ciento de la producción—; que el trabajo de la fábrica " . . . empieza en febrero, marzo, abril, mayo, junio, julio y generalmente terminamos durante el mes de agosto"; que los residuos eran echados a una distancia no menor de 150 metros de la fábrica, pero que el sitio utilizado anteriormente no se puede utilizar por motivos de la expropiación; que intentaban llevar los residuos a otra finca que queda como a seis kilómetros de la fábrica, lo que costaría $6,500 por zafra, o sea, $3.25 por tonelada; y en cuanto a la otra finca que queda al otro lado de la nueva carretera, "la oferta . . . es por un período de cinco años $2.25 y por diez años $2.75.''; que el desagüe de la carretera es dentro de la finca, y que en tiempo de lluvia se empoza el agua; que no había recibido ninguna comunicación oficial del Departamento de Sanidad que le obligara a cesar depositando los residuos donde lo venía haciendo desde la expropiación.

W. E. Parkhurst declaró que ese año no trabajaron muchos días porque tenían poca fruta; que habían utilizado como seiscientas toneladas de piña para hacer mil cajas; que el sesenticinco por ciento es de residuos; continuó explicando

los contratos que tenían para ese año y explicó la producción en años anteriores.

Al apreciar esta prueba contradictoria y además como resultado de la inspección ocular que realizó, la corte inferior hizo constar en la opinión que emitió en apoyo de su sentencia que "constituye una más justa y adecuada compensación a pagarse a la demandada por los daños y perjuicios ocasionados . . . que la demandada ha de incurrir en un gasto adicional de setenta y cinco centavos por tonelada de residuos de piña que arrastre a su finca de 4½ cuerdas en la parte norte de su factoría, cruzando la carretera de nueva construcción." Rechazó, por tanto, como exagerado e innecesario el gasto de $3.25 por tonelada de arrastre de residuos que pretendía la demandada hacer hasta otra finca suya situada en Bayamón. El cálculo de los daños por este concepto que hizo la corte fué el siguiente:

"A base de esta cantidad de setenta y cinco centavos fijada como gasto adicional, nos daría un total de $7,500 al multiplicarla por mil toneladas por zafra y por 10 años de promedio del negocio de la demandada, plazo éste que es, a juicio de esta Corte, razonable. A esta cantidad debe descontarse los $4,000 ya pagados a la demandada por este mismo concepto."

Concedió además la corte $200 por la depreciación en el valor intrínseco de dos cuerdas de terreno en las cuales, en tiempo de lluvia, al llenarse, vierte sus aguas una alcantarilla construída por el demandante. En total aumentó los daños de $4,000 a $7,700, condenando al demandante a pagar a la demandada la diferencia, o sean, $3,700.

Somos de opinión que la corte sentenciadora no erró al resolver el conflicto que existe en la prueba anteriormente reseñada. Véase *Autoridad de Hogares* v. *Hutton,* 60 D.P.R. 463. Los casos citados por la apelante en los cuales esta Corte aumentó la compensación, son claramente distinguibles por haberse convencido esta Corte que la cuantía concedida era completamente irrazonable e inadecuada. La apelante en

este caso no nos ha convencido de que las conclusiones de hecho, basadas en el testimonio oral que ante su consideración tuvo la corte, sean claramente erróneas y en su consecuencia, de acuerdo con la Regla 52 de las Reglas de Enjuiciamiento Civil [1] no debemos dejarlas sin efecto.

*Debe confirmarse la sentencia apelada.*

(1)La Regla 52 de las Reglas de Enjuiciamiento Civil lee, en parte, como sigue: ''. . . Las conclusiones de hecho basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas y se tomará en cuenta la oportunidad de la corte sentenciadora para juzgar de la credibilidad de los testigos. . . .''