El Pueblo de Puerto Rico, representado por el Presidente de la Comisión de Parques y Recreos Públicos, Julio Enrique Monagas, demandante, apelado y apelante, *v.* Ramón Carmona Rivera y su esposa Flora Sariego Garced; Juan Rodríguez Ríos y María Clemencia Rivera, demandados, apelantes los tres primeros y apelados.

Núm. 9893.—*Sometido:* Junio 2, 1949.—*Resuelto:* Julio 21, 1949.

*E. Martínez Rivera* y *L. Blanco Lugo,* abogados de los demandados apelantes; *Hon. Procurador General Vicente Géigel Polanco (Luis Negrón Fernández, Ex Procurador General,* en la moción para desestimar) y *Carlos J. Faure* y *José A. Luiña, Procuradores Generales Auxiliares,* abogados del demandante, apelado y apelante.

EL JUEZ PRESIDENTE SEÑOR DE JESÚS emitió la opinión del tribunal.

El Pueblo de Puerto Rico instó procedimientos para expropiar dos parcelas de terreno pertenecientes a Ramón Carmona y su esposa y a Juan Rodríguez, situadas en el pueblo de Comerío. La primera tiene una cabida de 1.031 cuerdas y la segunda de 0.8742 cuerdas. La de 1.031 cuerdas pertenece en su totalidad a Ramón Carmona y a su esposa. En la segunda con un área de 0.8742 cuerdas Juan Rodríguez es dueño de 992 metros cuadrados que le fueron vendidos por Carmona poco antes de la expropiación. Como justo valor de las mismas, El Pueblo de Puerto Rico depositó la cantidad de $3,811.80, correspondiendo a la primera parcela $2,089.63 y a la segunda $1,722.17. Los propietarios contestaron la demanda alegando que el valor razonable de las parcelas era de $38,645.73. Para sostenerlo, presentaron evidencia consistente en ofertas de compra que habían hecho a Carmona; ventas de parcelas contiguas realizadas unas muchos años antes y otras contemporáneamente con la expropiación. Entre estas últimas está la venta de los 992 metros cuadrados que hizo Carmona a Juan Rodríguez.

El Pueblo de Puerto Rico presentó un perito tasador para sostener el valor que le había dado a las parcelas en su petición de expropiación. El juez de distrito hizo una inspección ocular y al dictar sentencia determinó que el valor razonable del terreno expropiado es de $4 el metro cuadrado. Asimismo concluyó que con motivo de la expropiación, Carmona había sufrido daños en el remanente de su finca ascendentes a $1,000 y que a Juan Rodríguez debía pagársele, además, la cantidad de $300, valor del relleno que hizo en su porción de 992 metros.

Demandante y demandados apelaron de la sentencia dictada. El Pueblo de Puerto Rico, al notificar su escrito de apelación el 22 de junio de 1948, lo hizo por correo a pesar de que los abogados de ambas partes tienen sus oficinas en

la ciudad de San Juan. Luego de haberse radicado los alegatos en los dos recursos, los demandados han solicitado la desestimación del que interpuso El Pueblo. Fundan su solicitud en que en el caso de *Hernández et al.* v. *Corte Municipal,* 69 D.P.R. 887, se resolvió que las Reglas de Enjuiciamiento Civil no son aplicables a las apelaciones; que en su tramitación la notificación o entrega de documentos debe regirse por los artículos 320 y siguientes del Código de Enjuiciamiento Civil; y que como de acuerdo con las disposiciones del Código, cuando los letrados no residieren o tuvieren sus oficinas en distintos puntos entre los cuales hubiere un servicio regular de comunicaciones por correo, las notificaciones del escrito de apelación deben hacerse personalmente, este Tribunal no adquirió jurisdicción y debe desestimarse la apelación interpuesta por El Pueblo. Sin embargo, con anterioridad a esa opinión, en *Cardona* v. *Ortega,* 68 D.P.R. 658, se había resuelto que la notificación de un escrito de apelación en las condiciones en que se hizo en el presente caso, era válida de conformidad con la Regla 5(*b*) de las de Enjuiciamiento Civil.

El Pueblo en este caso notificó su apelación de acuerdo con lo establecido en el caso de *Cardona,* supra, que en aquella fecha era la ley en esta jurisdicción; y habiendo de hecho quedado notificada la parte contraria, sería una negación de la justicia desestimar la apelación interpuesta. Por eso, siguiendo la doctrina establecida por este Tribunal en *Quintero* v. *Servicio de Riego,* 66 D.P.R. 940 y *Ex parte Bithorn vda. Benítez,* 53 D.P.R. 584, en uso de nuestra discreción, se declara sin lugar la moción de desestimación.

Considerando el caso en su fondo resolveremos, en primer término, la apelación interpuesta por El Pueblo. Como apuntamos antes, los demandados presentaron prueba de ofertas de compra que se hicieron a uno de ellos, así como de ventas remotas de predios adyacentes a los que fueron

objeto de esta expropiación. El Pueblo señala, como error, la admisión de tal evidencia. Parece claro que meras ofertas de compra no constituyen la evidencia concreta y precisa que ayuda al juez a determinar el valor razonable de la propiedad expropiada. Por el contrario, es evidencia incierta y especulativa. *Sharp* v. *United States,* 191 U. S. 341 y *United States* v. *Playa de Flor Land & Improvement Co.,* 160 F.2d 131 (C.C.A. 5, 1947). Por la misma razón es inadmisible para probar el valor razonable de terrenos expropiados, las ventas efectuadas con mucha anterioridad a la fecha de la expropiación, si no se demuestra que la situación no ha variado sustancialmente. La evidencia presentada de ventas remotas llega hasta algunas efectuadas treinta y siete años antes de radicarse la demanda. En casos de expropiación, el valor razonable del inmueble expropiado es aquel que tiene a la fecha de la expropiación considerado el mejor uso a que pueda destinarse. *In re Board of Water Supply of City of New York,* 14 N.E.2d 789 (N.Y., 1938). Difícilmente puede ayudar a establecer el valor razonable de un terreno las ventas realizadas treinta y siete años antes de la fecha en que se expropia el mismo, a falta de evidencia demostrativa de que el valor no ha variado. Pero, a pesar de que la evidencia que acabamos de considerar era inadmisible, el factor de verdadera importancia—como lo admite la representación de El Pueblo—que indujo a la corte a decidir que el precio de la finca expropiada era el de $4 el metro cuadrado, fué la prueba de ventas recientes de terrenos de la misma finca, aunque de inferiores condiciones, a $3 el metro cuadrado. Así, pues, si independientemente del hecho de haber errado la corte en la admisión de la prueba antes discutida, encontramos que la sentencia está sostenida por prueba admisible de ventas recientes, el error en la admisión de la evidencia de ofertas de compra y ventas remotas, no perjudicó los derechos sustanciales de los demandados y por consiguiente, no causa revocación.

■■ Pasemos, pues, a discutir el tercer error señalado por El Pueblo. Arguye El Pueblo que la evidencia de ventas contemporáneas con la expropiación, no demostró que las parcelas vendidas fueran similares a la finca expropiada, ya que dichas ventas consistían de predios de 200, 400 y alrededor de 1,000 metros cuadrados, mientras las parcelas expropiadas totalizaban alrededor de 1.90 cuerdas. Pero es que la diferencia de cabida entre unos y otros predios no es tan grande que afecte considerablemente la diferencia de precio entre ellos. Además, el juez de distrito realizó una inspección ocular, donde pudo apreciar las condiciones de dichos predios, expresándose en los siguientes términos:

". . . No podemos dejar de escapar a nuestra consideración la situación topográfica del pueblo; casi en su totalidad, podríamos decir completamente accidentada y sin sitios o demarcaciones para donde expandirse, lo que sin duda alguna ha hecho que el precio de las parcelas aumente en el mercado. Además, debemos considerar el precio de $3.00 el metro cuadrado de las ventas efectuadas de parcelas de la misma finca, pero en el sitio bajo, una vez cruzada la carretera, en sitio húmedo y pantanoso, colindando con el río, y fácilmente inundado por éste. . . ."

Parece claro, pues, que la corte no erró al admitir en evidencia esas ventas realizadas alrededor de la fecha de la expropiación. En lo que sí erró la corte inferior fué en adjudicarle a Juan Rodríguez, en adición a los $4 el metro cuadrado que determinó era el valor razonable de su propiedad a la fecha de la expropiación, la cantidad de $300 adicionales gastados por él en el relleno del solar. Como la determinación del valor fué hecha a la fecha de la expropiación, necesariamente estaba incluído el gasto que ya había hecho el demandado en ponerlo en las condiciones que se hallaba en aquella fecha.

■ Considerando ahora el recurso interpuesto por los expropiados, los dos primeros errores prácticamente se circunscriben a atacar la apreciación que de la prueba hizo la corte sentenciadora. Sostienen que el valor del terreno ex-

318

propiado es superior al que le dió la corte y que los daños sufridos por Carmona en el resto de su finca, ascendían a más de los $1,000 que le fueron concedidos por ese concepto. Pero como las conclusiones de la corte están sostenidas por la evidencia que tuvo ante sí, no existe motivo alguno que justifique alterarlas. *Pueblo* v. *Muñoz*, 69 D.P.R. 95; *Pueblo* v. *García*, 66 D.P.R. 504 y *Pueblo* v. *Parkhurst Canning Co.*, 64 D.P.R. 568.

Es innecesario discutir el tercer error, ya que el mismo se refiere a la adjudicación que hizo la corte a favor de Juan Rodríguez por el valor del relleno realizado en la parcela que le pertenecía, pues ya lo discutimos al considerar la apelación interpuesta por El Pueblo.

*Procede modificar la sentencia apelada eliminando de la misma la partida de $300 que fué concedida a Juan Rodríguez por el valor del relleno realizado en la parcela de su propiedad con anterioridad a la expropiación. Así modificada se confirma.*

El Juez Asociado Sr. Negrón Fernández no intervino.