MARÍA MONSERRATE, conocida por MONSERRATE SANTIAGO RIVERA, peticionaria, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado; SOL LUIS DESCARTES, TESORERO DE PUERTO RICO, interventor.

Núm. 227.—*Sometido:* Mayo 5, 1950. *Resuelto:* Julio 14, 1950.

*Herbert S. McConnel, Raúl Matos* y *Adolfo Valdés,* abogados de la peticionaria; *Hon. Procurador General Vicente Géigel Polanco (José C. Aponte, Procurador General Interino,* en el alegato) y *J. B. Fernández Badillo, Procurador General Auxiliar,* abogados del interventor, querellado en el pleito principal.

EL JUEZ PRESIDENTE SEÑOR DE JESÚS emitió la opinión del tribunal.

Monserrate Santiago, durante su matrimonio con Vicente Usera, adquirió, por herencia, antes del 1ro. de marzo de 1913, cierta finca rústica denominada Abey, la que según declaró el Tribunal de Contribuciones, valía en dicha fecha la cantidad de $41,800. El Gobierno de los Estados Unidos la expropió el 9 de diciembre de 1942 por la cantidad de $59,800,(¹) la cual fué depositada el 21 del mismo mes en The National City Bank of New York (Sucursal de Ponce) en la cuenta corriente de Vicente Usera. En diciembre de 1944 Monserrate Santiago compró al Gobierno de los Estados Unidos la misma finca por precio de $59,800, del cual dedujo la compradora la cantidad de $7,000 que se estipuló era el valor del uso de la finca durante el tiempo en que la poseyó el Gobierno.

El 4 de enero de 1945 el Tesorero de Puerto Rico notificó a los herederos de Vicente Usera, los aquí peticionarios, entre otras deficiencias, una correspondiente al año contributivo de 1942 por concepto de beneficios obtenidos con motivo de la expropiación de la finca Abey(²) y otra correspondiente a los años 1940 y 1941 por el 47.72 por ciento de lo pagado por cánones de riego(³) que correspondían a la capitalización de los bonos de riego sobre ciertas fincas de la herencia. De la decisión del Tribunal de Contribuciones que parcialmente sostuvo las deficiencias, los peticionarios recurrieron para ante este Tribunal mediante el presente recurso de *certiorari*, el cual en lo que respecta al alegado beneficio obtenido por Monserrate Santiago con relación a la finca Abey, está limitado a las siguientes cuestiones: (1) Que la expropiación forzosa no llegó a consumarse ya que poco después de recibido el

---

(¹) De la suma de $59,800 se reservó el Gobierno la cantidad de $349.23 para el pago de la contribución territorial.

(²) A virtud de la Ley núm. 31 de 1941 ((1) pág. 479) se exigió la radicación de una sola planilla para marido y mujer, aunque se tratase de bienes privativos.

(³) El Tribunal de Contribuciones determinó que la porción no deducible de la cuota de riego para el año 1941 fué de 38.08 por ciento.

precio por ella y obtenida la posesión de la finca por el Gobierno, se iniciaron las conversaciones que culminaron en la readquisición de la finca por su anterior dueña en diciembre de 1944; (2) que en el supuesto de que se entienda que la expropiación fué consumada, no hubo beneficios, toda vez que la finca fué readquirida por su anterior dueña inmediatamente después de la expropiación, a los efectos de la sección 6 (*b*) (5) de la Ley de Contribuciones sobre Ingresos; (3) que erró el Tribunal de Contribuciones al decidir que el valor de la finca el 1ro. de marzo de 1913 era $41,800; y (4) que en todo caso debe deducirse del ingreso tributable la cantidad de $7,000 que el Gobierno de los Estados Unidos le pagó por el uso de la finca y que había sido declarada en la planilla de contribución sobre ingresos.

En lo que respecta al por ciento de la cuota de riego que no se le permite deducir, la controversia se limita a lo siguiente: (1) que era un gasto necesario del negocio de cultivo de cañas de azúcar; y (2) que había sido la práctica administrativa permitir la deducción total de ese gasto.

### I

█ La tesis de que la expropiación no fué consumada es insostenible. Una vez que se radique la petición de incautación (*declaration of taking*) y se consigna el precio, el título queda investido en el expropiador. 40 U.S.C.A. sec. 258 (*a*) (1940). No afecta este resultado el hecho de que el Gobierno no llegara a inscribir su título en el Registro de la Propiedad, ni tampoco la circunstancia de que después de verificada la expropiación, la anterior dueña siguiera pagando los recibos de las contribuciones territoriales que venían expedidos a su nombre.[4]

---

[4] Esta situación es fácilmente explicable atendida la circunstancia de que la finca fué expropiada el 9 de diciembre de 1942 sin que el Gobierno inscribiera su título. Y como el 15 de enero de 1943 la propiedad aparecía en el Registro de la Propiedad a nombre de la anterior dueña, no se verificó cambio alguno al expedirse los recibos de contribuciones para el año fiscal 1943–1944.

## II

■■ Suponiendo que, considerado el tiempo transcurrido entre la expropiación y la readquisición, pudiera considerarse que la finca había sido readquirida inmediatamente a los efectos de la sección 6 (*b*) (5), (⁵) los peticionarios no pueden acogerse a los beneficios de esa disposición legal, toda vez que no identificaron (*traced*), como procedente de la expropiación, el dinero con que la compraron.

Interpretando la sección 203 (*b*) (5) de la Ley Federal de Contribuciones sobre Ingresos de 1924, idéntica a la sección 6 (*b*) (5) de la nuestra, se dijo en el caso de *Frischkorn Development Co.* v. *Commissioner of Internal Revenue*, 30 B.T.A. 8, confirmado en 88 F.2d 1009 (C.C.A. 6to. 1937) caso núm. 2, que para que el contribuyente pueda acogerse a dicha sección, no es suficiente con que pruebe que con posterioridad al recibo del dinero procedente de la expropiación, compró otra propiedad similar y relacionada en su uso con la expropiada, sino que debe probar que el dinero con que compró la última procede de la expropiación y aún así sólo tendría derecho a los beneficios de dicha sección hasta aquella parte del precio que procediere de la expropiación. Es decir, que para que el contribuyente tenga derecho al beneficio de la citada ley, no puede invertir el dinero de la expropiación en otra cosa y comprar con otro dinero la propiedad similar.

---

(⁵) La sección 6 (*b*) (5) de la Ley Insular de Contribuciones sobre Ingresos, prescribe:

"(5) Si la propiedad (como resultado de su destrucción en todo o en parte, de robo o confiscación o del ejercicio del poder de requisición o expropiación forzosa, o del peligro inminente de ello) fuere compulsoria o involuntariamente convertida en propiedad similar o relacionada en servicio o en uso con la propiedad de ese modo convertida, o en dinero efectivo que se gastare inmediatamente y de buena fe, de acuerdo con el reglamento prescrito por el Tesorero, en la adquisición de otra propiedad similar o relacionada en servicio o uso con la propiedad así convertida, o en la adquisición del dominio de una corporación dueña de esa otra propiedad, o en el establecimiento de un fondo de reposición, no se reconocerá ganancia o pérdida alguna. Si parte del dinero no fuere de ese modo invertido, la ganancia, si la hubiere, será reconocida; pero en cantidad que no excederá del dinero que no se invirtiere de ese modo."

Pero, como hemos dicho, el dinero fué depositado en la cuenta corriente de Vicente Usera en The National City Bank of New York (Sucursal de Ponce) el 21 de diciembre de 1942 y resulta de los estados de cuenta de dicho banco, que no sólo se giró contra ese dinero, sí que en agosto 20, 1943, la cuenta estaba sobregirada por $8,383.52. Siendo ello así, no puede sostenerse que la readquisición de la finca se hiciera con el dinero procedente de la expropiación.

## III

■ En lo que concierne al valor que el Tribunal de Contribuciones determinó que tenía la finca el 1ro. de marzo de 1913, debemos tener en cuenta que los peritos del Gobierno declararon que su valor en aquella fecha era $25,357, mientras los querellantes y sus peritos sostuvieron que era $51,672.50, por lo cual la conclusión a que llegó la corte al efecto de que el valor de la finca en el mercado en aquella fecha era $41,800, encuentra apoyo en la prueba. En tales circunstancias, no estamos justificados en alterar la conclusión a que llegara el Tribunal a ese efecto. *Pueblo* v. *Carmona*, 70 D.P.R. 312.

## IV

■ La proposición de los peticionarios de que en todo caso debemos deducir del ingreso neto tributable los $7,000 que por concepto del uso de la finca recibiera la contribuyente, carece de méritos. Esta proposición está basada en la defensa de reconvención (*recoupment*) y la misma no puede invocarse por primera vez en apelación, ya que es requisito indispensable que se haya alegado en el tribunal de primera instancia y aquí no se hizo. Regla 13 (*a*) de Enjuiciamiento Civil; 1 Moore's *Federal Practice* 667 (1938); McConnell, *The Doctrine of Recoupment in Federal Taxation*, 28 Va. L. Rev. 577, 597 (1942).

## V

■ Sostienen los peticionarios que las cuotas de riego son deducibles en su totalidad e invocan las disposiciones de

la sección 16 (a) (1) de la Ley de Contribuciones sobre Ingresos. (6)

Esta cuestión fué resuelta adversamente a la tesis de los recurrentes en el caso de *Descartes, Tes.* v. *Tribunal de Contribuciones, Sucesión Cautiño, interventora*, ante, pág. 248, al denegar la moción de reconsideración, y es innecesario volver a discutirla.

En lo que respecta a que la práctica administrativa era la de permitir la deducción de la totalidad de lo pagado por concepto de cuotas de riego, bastará decir que la prueba no sostuvo la existencia de tal práctica.

*Procede confirmar la decisión del Tribunal de Contribuciones.*

El Juez Asociado Sr. Negrón Fernández se inhibió.

---

(6) La sección 16 (a) (1) de la Ley de Contribuciones sobre Ingresos, en lo pertinente, prescribe:

"Sección 16.—(a) Al computar el ingreso neto se admitirán como deducciones:

"(1) Todos los gastos ordinarios y necesarios pagados o incurridos durante el año contributivo en la explotación de cualquier industria o negocio, . . . . . . ."