EL PUEBLO DE PUERTO RICO, representado por el Presidente de la Comisión de Parques y Recreo Públicos, demandante, apelado y apelante, *v.* SUCESIÓN DE DOÑA VIOLANTE RABELL CABRERO, compuesta de Doña Evarista Rodríguez Rabell, et al., demandados, apelados y apelantes.

Núm. 10275.—*Sometido:* Febrero 6, 1951. *Resuelto:* Mayo 29, 1951.

*Hon. Procurador General Víctor Gutiérrez Franqui (Vicente Géigel Polanco, ex Procurador General, en el alegato) y José Antonio Luiña, Procurador General Auxiliar, abogados del apelante apelado; José Luis Cancio, abogado de los apelados apelantes.*

EL JUEZ PRESIDENTE INTERINO SEÑOR TODD, JR., emitió la opinión del tribunal.

Como sucede en la mayoría de los casos sobre expropiación forzosa, la única cuestión envuelta én el presente es el valor de la propiedad expropiada. El Pueblo de Puerto Rico, representado por el Presidente de la Comisión de Parques y Recreo Públicos,[1] estableció la presente acción contra la Sucesión de Doña Violante Rabell Cabrero con el fin de expropiar una parcela de terreno de 5.4081 cuerdas, segregación de una finca de 305.74 cuerdas, situada en el Bo. Bahomaney de San Sebastián, con el fin de construir un parque atlético en dicho pueblo. Consignó la suma de $3,785.67 como justo valor de dicha parcela y habiendo radicado una Declaración de Adquisición y Entrega, quedó investido con título de dominio sobre la misma.

Los demandados al contestar la demanda negaron que el justo valor en el mercado de la parcela expropiada lo fuera la suma consignada y por el contrario alegaron que su valor era el de $25,000 y además, que la finca principal había sufrido daños en una suma adicional de $25,000 con motivo de la segregación. Al comenzar el juicio, sin embargo, los demandados enmendaron su contestación y limitaron su reclamación en esta forma: las 5.4081 cuerdas a $2,000 por cuerda, $10,816; daños por depreciación a cuatro cuerdas del remanente, a $1,000 por cuerda, $4,000; y daños

---

[1] Véase el artículo 4 de la Ley núm. 4 de 30 de junio de 1947 (Cuarta y Quinta Sesiones Especiales, 1947, pág. 11).

al remanente de la finca por inversión que había que realizar para drenaje, $3,380, o sea, un total de $18,196.

Visto el caso, el Tribunal de Expropiaciones dictó sentencia en la que determinó que el justo valor en el mercado de la parcela expropiada era el de $1,100 por cuerda, o sean, $5,948.91, y que habiendo sufrido daños en 55 céntimos de cuerda el remanente de la finca en una suma de $512.50, la cantidad total a ser pagada a los demandados era la de $6,461.41. Habiendo ellos recibido los $3,785.67, condenó al demandante a consignar la diferencia, o sean, $2,675.74, más intereses al 6 por ciento anual desde el día de la consignación original.(²)

No conformes con la sentencia ambas partes apelaron.

■■ Los demandados hacen un señalamiento de nueve errores. La mayoría de ellos atacan, en una u otra forma, la apreciación que de la prueba hizo el Tribunal de Expropiaciones para determinar el valor de la parcela expropiada y los daños por depreciación sufridos por la finca principal con motivo de la segregación.

La prueba fué contradictoria. La de los demandados tendió a demostrar que el valor de la parcela en el mercado, para fines agrícolas, era de $1,600 la cuerda y que por su localización cerca del pueblo de San Sebastián, también podía ser utilizada con fines de urbanización, teniendo entonces un valor de $2,000 por cuerda.

El tribunal inferior dió crédito a la prueba del demandante, corroborada en parte por la declaración del testigo de los demandados Antonio Sagardía, que para fines agrícolas el valor por cuerda era el de $700 pero al mismo tiempo dió crédito a la prueba de los demandados al efecto de que el mejor uso potencial de la parcela podía ser para fines de

(²)En 17 de mayo de 1949 el Tribunal de Expropiaciones modificó su sentencia de 10 del mismo mes, con efecto *nunc pro tunc*, e hizo constar que a virtud de la estipulación sometida por las partes condenaba al demandante a pagar, además de la suma que indica su sentencia, la cantidad de $162.24. (Nota adicionada por Resolución de junio 26, 1951.)

urbanización lo que aumentaría su valor en $400 por cuerda y concluyó que el justo valor en el mercado era el de $1,100 la cuerda. Es de notarse aquí que el primero de los dos errores señalados por el demandante en su recurso ataca esta conclusión, sosteniendo que el tribunal a quo erró al tomar en consideración el aumento de $400 por cuerda como posible uso de la parcela para fines de urbanización.

En cuanto a los errores señalados por los demandados, el tribunal inferior dirimió el conflicto en la prueba, dió crédito, en parte, tanto a testigos del demandante como a un testigo de los demandados y al así hacerlo, no creemos que incurriera en manifiesto error. Tampoco cometió el error señalado por el demandante, ya que el valor de la propiedad en el mercado no debe determinarse únicamente por el uso a que ha estado dedicada como único factor, sino que también debe considerarse en estos casos el uso más beneficioso a que la propiedad sea adaptable en un futuro próximo razonable. *Pueblo* v. *García,* 66 D.P.R. 504, 509–10; *Pueblo* v. *Huyke,* 70 D.P.R. 754, 757; *United States* v. *Causby,* 328 U. S. 256, 261; *United States ex rel. T.V.A.* v. *Powelson,* 319 U. S. 266, 275. No interpretamos la conclusión de la corte en el sentido en que lo hace el demandante al efecto de que determinó dos valoraciones en el mercado para la parcela y las sumó. Más bien consideró los distintos usos a que podía dedicarse y dando crédito a la prueba de ambas partes determinó que el valor por cuerda en el mercado para fines de urbanización era el de $1,100. Si la corte hubiera hecho lo que le imputa el demandante hubiera sumado ese valor de $1,100 para urbanizar a los $700 para fines agrícolas y el resultado hubiera sido $1,800 por cuerda. Eso es lo que no puede hacerse de acuerdo con la jurisprudencia citada por el apelante. *Morton Butler Timber Co.* v. *United States,* 91 F.2d 884; *Metropolitan Water Dist.* v. *Adams,* 116 P.2d 7.

En cuanto a la depreciación sufrida por la finca principal de los demandados con motivo de la segregación de la parcela expropiada, sostienen los demandados que fué

error del tribunal sentenciador limitar los daños sufridos a $512.50 en 55 céntimos de una cuerda al Norte de la finca principal cuando la prueba demostró que eran dos cuerdas al Norte y dos al Sur las que habían sufrido daños. En cuanto a este particular el tribunal aceptó y dió crédito al perito de los propios demandados, Samuel Gracia, quien declaró que los que sufrieron depreciación en la finca principal fueron esos 55 céntimos de cuerda al Norte y que los daños hacia el Sur eran insignificantes. Es cierto que los testigos de los demandados Antonio Sagardía y Mario Oronoz declararon que el daño por depreciación de la finca principal se extendía a dos cuerdas al Norte y dos cuerdas al Sur, empero, la corte no estaba obligada a aceptar las declaraciones de testigos más favorables a los demandados si otro testigo de ellos declaró lo contrario.

■ El otro error señalado por el demandante en su recurso también impugna la concesión de los $512.50 pero, desde luego, por motivos distintos.

El tribunal inferior, al conceder esta suma, se expresó así:

" . . . Estimamos que la finca principal ha sufrido daños en una cabida de 55 céntimos de cuerda, radicada entre la verja construída al Norte de la parcela expropiada y la quebrada que corre de Este a Oeste al Norte de dicha parcela. Este predio ha quedado en forma irregular, largo y estrecho, en forma de cuchillo. Los asientos (*bleachers*) del parque atlético están situados en ese mismo lado y es natural que esté sujeto a las incidencias que siempre trae consigo la aglomeración de mucha gente en un lugar semejante. Es lógico que un comprador voluntario tenga en su mente estas consideraciones en cuanto al precio a pagar por dicho predio.

"Habiendo la Corte resuelto que el valor de estas tierras para la fecha de la adquisición era de mil cien dólares ($1,100) por cuerda, los 55 céntimos indicados valían $605 antes de la expropiación, y habiéndose probado que después valían $82.50, las demandadas han sufrido daños por segregación ascendentes a la suma de quinientos doce dólares con cincuenta centavos ($512.50)."

Admite el demandante-apelante que la concesión de daños por segregación por concepto de la forma irregular, largo y estrecho, en que quedaron los 55 céntimos de cuerda, es procedente y correcta, pero que por ser especulativos al negocio agrícola de los demandados, no procedía conceder daños por las incidencias que la aglomeración de gente en el parque atlético a construirse en la parcela expropiada pudieran ocasionar. Arguye, entonces, que no habiéndose determinado los daños por uno y otro concepto, debe devolverse el caso al tribunal inferior para que solamente conceda la suma que corresponda por la forma irregular en que ha quedado la parcela de 55 céntimos de cuerda.

De la lectura que hemos hecho de la prueba en este caso, estamos convencidos que la conclusión a que llegó el tribunal a quo es correcta. Aun cuando aceptáramos, sin resolverlo, que erró al no exponer separadamente la cuantía de los daños por segregación en la parcela de 55 céntimos de cuerda, consideramos que la prueba demostró que dicha parcela, por constituir un cuchillo de forma irregular y estrecha, casi podía considerarse inservible tanto para fines agrícolas como para su posible uso como urbanización, no sólo por su conformación sino también por su situación al lado del parque atlético. No constituye esto un daño sufrido en el negocio agrícola de los demandados o daños especulativos, sino una merma real y efectiva en el valor de esa parcela en el mercado para cualquiera de esos fines.

Otro error señalado por los demandados se refiere al hecho de no haber concedido el tribunal a quo daños por la inversión necesaria para construir una nueva alcantarilla con el fin de conjurar, en el remanente de la finca no expropiado, la inundación de agua y arrastre de tierra como consecuencia de las obras realizadas por el demandante en la parcela expropiada. De nuevo en cuanto a este particular la prueba fué contradictoria y la corte, que también practicó una inspección ocular, dió crédito a la declaración del testigo del demandante, Arturo J. Rodríguez, perito ingeniero,

al efecto de que las obras realizadas no afectaron el decurso de las aguas pluviales las cuales corrían en la misma forma y dirección que antes de expropiarse la parcela de cinco cuerdas.

Por último sostienen los apelantes que erró el tribunal al no admitir como prueba una carta del Comisionado del Interior fijándole valor a otras tierras de los demandados iguales a la expropiada, con el fin de adquirirlas por compra para El Pueblo de Puerto Rico. Esa prueba era claramente inadmisible. *Pueblo* v. *Carmona,* 70 D.P.R. 312, 316. No se cometió este error y tampoco el imputado al tribunal por no haber dado valor alguno a la prueba de los demandados en cuanto a ventas en el mercado de tierras similares a la expropiada ya que la corte llegó a la conclusión de que dichas tierras por su cabida, topografía y localización no eran similares a la parcela expropiada, y en cuanto a una de ellas cuya cabida de 4½ cuerdas se acercaba a la de la parcela expropiada y la cual fué comprada por Flor Quiles Bonilla, la prueba demostró que por haberle sido expropiada otra propiedad suya donde tenía su negocio se vió obligado a hacer esa compra. La corte concluyó, correctamente a nuestro juicio, que las circunstancias concurrentes en dicha venta no le daban el carácter de voluntariedad necesario para tomarla como base para fijar el valor de la parcela aquí expropiada.

Creemos que las cuestiones envueltas en estos recursos se contraen principalmente a la apreciación de la prueba hecha por el Tribunal de Expropiaciones en cuanto al valor en el mercado de la parcela expropiada y a los daños por depreciación sufridos por la finca principal. Hemos examinado la prueba y consideramos que dicho Tribunal no cometió manifiesto error en su apreciación.

*Debe confirmarse la sentencia.*

El Juez Asociado Sr. Negrón Fernández se inhibió.