AUTORIDAD SOBRE HOGARES DE PUERTO RICO, demandante y apelada, *v.* CARMELO J., RAFAEL y AMADO COLÓN; RAMÓN MATHOS GOITÍA; JOHN DOE y EL PUEBLO DE PUERTO RICO, representado por el Tesorero de Puerto Rico, demandados y apelantes los tres primeros.

Núm. 10380.—*Sometido:* Noviembre 5, 1951.—*Resuelto:* Marzo 13, 1952.

*Arturo Ortiz Toro,* abogado de los apelantes; *Rafael B. Pérez Mercado,* abogado de la apelada.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

Trasladado este caso de la extinta Corte de Distrito de Arecibo, donde originalmente se presentó, al Tribunal de Expropiaciones de Puerto Rico, éste, luego de un prolongado juicio en sus méritos, dictó sentencia declarando con lugar la demanda, decretando la expropiación definitiva de la finca objeto del procedimiento, fijando como justo valor de la misma la suma de $37,000 y condenando a la demandante, Autoridad de Hogares de Puerto Rico, a pagar a los demandados la suma de $22,171.75,([1]) más intereses legales desde la fecha de la adquisición de la finca hasta el total pago de esa cantidad, debiéndose entregar de ella $1,297.07 al Tesorero de Puerto Rico en pago de las contribuciones adeudadas.

No conformes, los demandados apelaron. Sostienen ahora que el Tribunal de Expropiaciones erró: (1) al no dic-

---

([1]) Con la Declaración de Adquisición y Entrega, presentada al día siguiente de haberse instado la demanda, se acompañó la suma de $14,828.25 como compensación justa y razonable por la propiedad.

tar sentencia dejando sin efecto su resolución de 20 de octubre de 1944 y al no restituir el título de los demandados en la finca objeto de expropiación; (2) al no admitir preguntas sobre el precio de solares en los años 1935 y 1944; al no permitir preguntas al testigo Arturo Márquez sobre su opinión de los terrenos expropiados como ensanche para urbanización; al no permitirle declarar lo que valía la cuerda en el 1944; al no permitir prueba sobre ventas verbales de solares a distintas personas; al no permitir preguntas respecto a si a los demandados querían comprarles solares en el año 1944; al no admitir prueba sobre el precio a que se vendía terreno en el cementerio municipal; al no tomar en consideración la declaración de Buxeda; al denegar la admisión de prueba y al no conceder la inspección ocular·solicitada; (3) en la apreciación de la prueba; (4) al fijar el valor de la finca expropiada en $37,000; (5) al resolver que ésta tenía una cabida de 63.78 cuerdas; y (6) al no condenar a la demandante en costas y honorarios de abogado. Discutiremos los errores reseñados en el orden en que han sido señalados por los apelantes.

■■■ Respecto al primero de ellos bastará decir que según resolvimos en *Autoridad Sobre Hogares* v. *Sagastivelza*, 72 D.P.R. 235, el derecho a la reversión de la propiedad expropiada, en armonía con el artículo 7 de la Ley de Expropiación Forzosa de 1903 (pág. 50) tan sólo surgía después de expirados los seis meses siguientes a la fecha en que se dictaba la sentencia final y definitiva en el pleito de expropiación; que tal sentencia final y definitiva no se ha dictado aún en el presente caso, que, por otra parte, dicha sección fué derogada expresamente por el artículo 3 de la Ley 105 de 7 de mayo de 1948 (págs. 241, 247) y que al presente, a tenor de lo provisto por el artículo 1º de la Ley 441 de 14 de mayo de 1947 (pág. 921), según fué enmendado por la ley 375 de 14 de mayo de 1949 (pág. 1149) el único derecho que asiste a "las personas naturales o jurídicas contra las cuales se hubiere tramitado recurso de expropiación por . . . agen-

cias o instrumentalidades" es el "preferente a readquirir su posesión y título sobre dichas propiedades, cuando El Pueblo de Puerto Rico o el departamento, agencia o instrumentalidad suya que tuviese inscrito a su nombre el título de dicha propiedad resolviese enajenar, total o parcialmente los bienes expropiados; . . .". No se cometió, pues, el primer error señalado.

■■ Tampoco el segundo. Además de tratarse de ventas remotas de solares, la que se expropia es una finca de más de sesenta cuerdas, que no guarda similitud de clase alguna en cuanto a tamaño, topografía y situación con los solares sobre los cuales se preguntaba al testigo. Véanse *Pueblo* v. *Sucn. Rabell*, 72 D.P.R. 574; *Pueblo* v. *Carmona*, 70 D.P.R. 312; *Pueblo* v. *Huyke*, 70 D.P.R. 754. Además, Arturo S. Márquez, testigo a quien se hicieron las preguntas, era tan sólo un ingeniero mecánico que tenía en Arecibo una finca de 46 a 47 cuerdas. La prueba no demostró, sin embargo, que él estuviera capacitado para declarar sobre los extremos que se le preguntaba.

■ Las ventas verbales a José A. Agostini y Héctor Gandía nunca se materializaron, y al no consumarse la prueba que se ofrecía equivalía a la de meras ofertas. Siendo esa prueba incierta y especulativa resultaba inadmisible. *Pueblo* v. *Sucn. Rabell*, supra. Los propios demandados admitieron que prueba de ofertas no era admisible. (Tr. Ev. pág. 199).

■ Prueba respecto al precio a que se vendía terreno en el cementerio municipal era también claramente inadmisible, ya que la misma invadía el campo de la especulación y la conjetura. *Pueblo* v. *Cementerio Buxeda*, 72 D.P.R. 326, 328; *Pueblo* v. *Huyke*, supra.

El testigo Raúl Buxeda declaró que si se dedicaran a cementerio 10 cuerdas del área total de la finca expropiada, las mismas valdrían no menos de $200,000, y que a base de $25 el metro cuadrado, que es, según él, lo menos que se cobra en casos similares en ciudades como Arecibo, se podría

sacar hasta $500,000. Siguió extendiéndose en sus consideraciones sobre el particular y el tribunal finalmente manifestó que eso era sumamente especulativo. Estamos de acuerdo, pues al igual que dijimos en *Pueblo* v. *Cementerio Buxeda,* supra, esto invadía, asimismo, el campo de la especulación y la conjetura.

■■ Al solicitársele que practicara una inspección ocular, el tribunal manifestó que de acceder a ello "prácticamente iríamos a ver una cosa que ya conocemos", y que "además, la prueba la tiene el Juez tan y tan clara en su mente que entiende que no necesita ir a ver el sitio otra vez más para completar el cuadro." A este respecto diremos que la concesión de una inspección ocular descansa siempre en la sana discreción del juez sentenciador y que bajo las circunstancias expuestas no es posible concluir que él abusara de esa discreción. *Autoridad Sobre Hogares* v. *Sagastivelza,* 72 D.P.R. 276, 286.

■ Bajo el segundo error señalado los demandados imputan, igualmente, al tribunal sentenciador innumerables errores al negarse a permitir que ciertos testigos declararan en relación con ventas de solares en otras urbanizaciones; respecto a demanda de solares frente a la carretera; respecto a si había personas interesadas en comprar solares antes de 1944 y sobre ciertas preguntas hechas a determinados testigos. Es innecesario discutirlos específicamente. Por las razones ya expuestas esa prueba era inadmisible y, por otra parte, los testigos a los cuales se hacían las preguntas de referencia no habían sido debidamente calificados para declarar sobre las materias en relación con las cuales se les interrogaba.

■ Los errores tercero y cuarto pueden ser discutidos conjuntamente. La prueba que tuvo ante su consideración el tribunal fué verdaderamente abundante. La de los demandados le fijaba a la propiedad un valor que, según algunos de sus testigos, llegaba a $500,000. Por otro lado, uno de los testigos del demandante fijó a la propiedad un valor de $14,828.25. Otro de los testigos de ésta dijo que no sería

económicamente ventajoso o factible urbanizar la finca; que no creía que la misma fuera apropiada para urbanización y que si la Autoridad tenía el propósito de dedicarla a tal fin ello se debía a que el gobierno podía hacer muchas cosas que no eran económicamente factibles ni ventajosas para un ciudadano particular.

El tribunal hizo constar reiteradamente que no había duda de que una de las cosas que podía afectar el valor en el mercado de una propiedad era a lo que razonable y probablemente podía ser adaptable esa propiedad. Tomó, por tanto, en consideración que posiblemente la misma podía ser urbanizada, al igual que sembrada de caña de azúcar o dedicada lucrativamente a lechería. En el curso de su opinión, luego de reseñar la prueba que tuvo ante sí y de hacer constar que consideraba toda la prueba admitida, el tribunal manifestó que a su juicio el valor justo y razonable en el mercado, allá para octubre de 1944 de toda la propiedad expropiada lo era la suma de $37,000. No creemos que esa conclusión esté huérfana de prueba, creyendo por el contrario que en los autos hay prueba suficiente para sostenerla. Debemos, en su consecuencia, respetarla, *Pueblo v. Soc. Agríc. Mario Mercado e Hijos*, 72 D.P.R. 792; *Autoridad Sobre Hogares v. Viera*, 72 D.P.R. 732; *Pueblo v. Lamboglia* 70 D.P.R. 810; *Pueblo v. Carmona*, supra; *Pueblo v. Huyke*, supra.

Tampoco cometió error el Tribunal de Expropiaciones al resolver que la finca expropiada tenía una cabida de 63.78 cuerdas. Un examen de los autos revela que en la demanda la finca se describe con esa área; que los testigos en reiteradas ocasiones dijeron que ésa era el área de la propiedad (véanse las págs. 93, 165 y 381 de la Tr. de Ev.); que en la carta que en 1º de septiembre de 1948 dirigió el abogado de la Autoridad al Registrador de la Propiedad de Arecibo solicitando le expidiera una certificación literal de la inscripción de la finca, se describe ésta como de 63.78 cuerdas y que en la certificación librada en respuesta a tal solicitud el Registrador hace constar específicamente que en la ins-

cripción primera de la finca se describe ésta "de igual modo que la descrita en la precedente solicitud". Basado en esa prueba el tribunal pudo concluir que el área de la finca era la indicada. Sea ello como fuere, en los autos aparece (Tr. Ev. pág. 364) que fué precisamente el letrado de los demandados quien indicó al tribunal que "ciertamente la única cuestión que había en discusión era si había cierto número de cuerdas menos, que quedamos, según el *ruling* de la corte, en que se pondrían de acuerdo ambas partes para que los ingenieros rectificaran o ratificaran la mensura." No aparece, sin embargo, en los autos que posteriormente se hiciera tal rectificación o ratificación. No puede, por ende, concluirse que fuera un error del tribunal inferior referirse a la finca con esa área.

En su sentencia el Tribunal de Expropiaciones no impuso a ninguna de las partes el pago de costas y honorarios de abogado. Los demandados sostienen que debió condenarse a la demandante al pago de ambos. Bastará decir que si bien de acuerdo con la ley 94 de 1937 los tribunales están en el deber de conceder costas a la parte a cuyo favor se dicta cualquier sentencia o resolución final, sin embargo, en el caso de autos no es posible decir que la sentencia fuera en su totalidad favorable a los demandados. Es indiscutible que la expropiación de la finca se decretó en favor de la demandante. A ese respecto la sentencia fué favorable a ella. Si bien en la demanda se alegó que el valor razonable y justo de la finca lo era la cantidad de $14,828.25 y el tribunal en su sentencia llega a la conclusión de que tal valor lo constituía la suma de $37,000, y condenó a la demandante a pagar a los demandados la diferencia, o sea $22,171.75, con intereses, no por ello la sentencia resultaba totalmente a favor de los demandados. La verdad es que la sentencia en parte se dictó a favor de la demandante y en parte a favor de los demandados. Bajo las circunstancias, no erró la corte al no condenar a aquélla al pago de las costas. Véanse además la Ley núm. 96 de 9 de mayo de 1947 (pág. 225) y la opinión *Per Curiam*

de 4 de agosto de 1950, emitida en el caso núm. 10,086 de *Atiles* v. *Fernando Amador, et al.*, sobre Daños y Perjuicios.

Los honorarios de abogado son concedidos a la parte victoriosa solamente cuando la que ha sido vencida ha procedido con temeridad. Por un lado, ya hemos visto que en el caso de autos no hay una verdadera parte perdidosa. Y por otro diremos que en numerosas ocasiones hemos dicho que la condena en honorarios de abogado es discrecional en el tribunal sentenciador y que con tal discreción no intervendremos, a no ser que se nos convenza de que ha habido un abuso de ella. Tal cosa no ocurre en este caso.

*Debe confirmarse la sentencia apelada.*