EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Administración de Terrenos de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Corporación Pesquera Henares, Inc.<br><br>Peticionarios | Certiorari<br><br>2018 TSPR 155<br><br>201 DPR ____ |

Número del Caso: CC-2016-536

Fecha:21 de agosto de 2018

Tribunal de Apelaciones:

  Región Judicial de San Juan

Abogados de los peticionarios:

  Lcdo. Elías Dávila Berrios
  Lcdo. Oscar Padilla López
  Lcdo. Rubén Soto Rodríguez

Abogados de los recurridos:

  Lcdo. Alberto Jiménez Santiago
  Lcdo. Carlos Cardona Fernández
  Lcda. Evelyn Meléndez Figueroa

Materia: Expropiación Forzosa: Elementos necesarios para catalogar varios predios o parcelas como una sola finca íntegra en el contexto de una reclamación de daños por desmembración como consecuencia de un procedimiento de expropiación forzosa. Análisis del requisito de unidad física o contigüidad.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Administración de Terrenos de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Corporación Pesquera Henares, Inc.<br><br>Peticionarios | **Núm.** CC-2016-0536 |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

En San Juan, Puerto Rico, a 21 de agosto de 2018.

En esta ocasión, tenemos la oportunidad de precisar cuáles son los elementos necesarios para catalogar varios predios o parcelas como una sola finca íntegra en el contexto de una reclamación de daños por desmembración como consecuencia de un procedimiento de expropiación forzosa. En específico, nos corresponde determinar si en nuestro ordenamiento jurídico la unidad física o contigüidad es un requisito indispensable para que varias parcelas se consideren una misma finca. A partir de tales determinaciones, procederemos a evaluar si erró el Tribunal de Apelaciones al desestimar sumariamente una acción de daños por desmembración luego de concluir que en el caso de autos es inexistente un predio remanente.[1] Ello, en vista de que las parcelas en cuestión no son contiguas.

---

[1] Entiéndase por "remanente" la porción no expropiada de una finca.

I

El 5 de febrero de 2002, la Administración de Terrenos de Puerto Rico (Administración de Terrenos) presentó una *Petición de expropiación forzosa* en contra de la Corporación Pesquera Henares, Inc. (la Corporación o parte con interés).[2] Mediante esta petición, la Administración de Terrenos solicitó el pleno dominio de la parcela número 049-36 de 0.24974 cuerdas, localizada en la sección Sur del barrio Santurce del Municipio de San Juan, así como de las mejoras allí enclavadas. El lote a expropiarse era utilizado como estacionamiento del Edificio Pesquera Henares (Edificio Pesquera). A pesar de que el Edificio Pesquera y el estacionamiento no figuran como predios contiguos, ambos pertenecen a un mismo dueño y ubican en Santurce.

Durante el trámite ante el Tribunal de Primera Instancia relacionado con la indemnización correspondiente por la expropiación en cuestión, la Corporación alegó ser acreedora de una compensación por la reducción del valor del Edificio Pesquera producido por la pérdida de su estacionamiento. Según lo alegado por la Corporación, la expropiación del estacionamiento (sujeto expropiado) produjo una merma en la renta anual del Edificio Pesquera (predio remanente), una propiedad de ocho (8) pisos destinada al alquiler comercial. Por lo tanto, arguyó

---

[2] *Véase* Caso civil Núm. KEF2002-0050.

tener derecho a una compensación por los daños sufridos tras la desmembración de su propiedad.

El 18 de marzo de 2014, el Tribunal de Primera Instancia emitió una *Sentencia parcial* en la que otorgó a la Administración de Terrenos el pleno dominio del estacionamiento y ordenó el pago de $505,000 como justa compensación a favor de la Corporación. Sin embargo, quedó pendiente la reclamación de daños por desmembración instada por la Corporación.

Por su parte, el 24 de marzo de 2014, la Administración de Terrenos presentó una moción de sentencia sumaria. En ésta, arguyó que procedía la desestimación de la reclamación de daños al remanente, puesto que el sujeto expropiado y el Edificio Pesquera no eran propiedades contiguas, la adquisición de éstas ocurrió en momentos diferentes y sus usos y números catastrales eran distintos. El 8 de mayo de 2014, la Corporación presentó su oposición a la solicitud de sentencia sumaria, a la cual anejó una declaración jurada y otros documentos. En esencia, la Corporación destacó que la indemnización por daños por desmembración surgía de la existencia de la unidad de uso y explotación económica existente entre ambas parcelas, por lo que la contigüidad entre el sujeto expropiado y el remanente no constituía un factor determinante para conceder la compensación. En fin, la Corporación adujo que la expropiación del sujeto desmembró la unidad de uso existente entre el Edificio

Pesquera y el estacionamiento, lo que provocó un perjuicio sustancial al uso y valor del remanente.

El 27 de octubre de 2014, el Tribunal de Primera Instancia notificó una *Resolución* mediante la cual denegó la sentencia sumaria y señaló la conferencia con antelación al juicio. El foro primario concluyó que la ausencia de contigüidad entre ambos predios y demás argumentos señalados por la Administración de Terrenos en su moción de sentencia sumaria no derrotaban la acción de daños por desmembración. De esta forma, el foro primario determinó que procedía la celebración del juicio en su fondo.

Por estar inconforme, la Administración de Terrenos presentó, el 26 de noviembre de 2014, un recurso de *certiorari* ante el Tribunal de Apelaciones. El 3 de febrero de 2015, el foro apelativo intermedio notificó una *Sentencia* mediante la cual revocó la *Resolución* recurrida. Esto, tras razonar que el foro primario omitió incluir en su decisión las determinaciones de hechos esenciales y pertinentes sobre los cuales no había controversia sustancial. Por tal razón, ordenó al Tribunal de Primera Instancia emitir una nueva resolución conforme a la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4.

Consiguientemente, el Tribunal de Primera Instancia emitió una *Resolución Enmendada* notificada el 23 de abril de 2015. En ésta denegó nuevamente la moción de sentencia

sumaria y dispuso, como hechos sobre los cuales no existía controversia los siguientes:

> 1. Según surge del Informe del Tasador Rubén Cintrón, entre la transacción de la compraventa del Edificio Pesquera y el lote utilizado para espacios de estacionamiento transcurrieron 37 años aproximadamente.
> . . .
> 4. El método utilizado por el Tasador Rubén Cintrón para determinar los daños al Edificio Pesquera fue el "antes y después" (before and after method).
> 5. El edificio Pesquera y el lote expropiado son dos propiedades separadas y no son contiguas. El Edificio Pesquera localiza en la Avenida Ponce de León 1600 y el predio expropiado localiza en la Calle del Parque 614, ambos en Santurce.

Por el contrario, el foro primario enumero como hechos controvertidos los siguientes:

> "a) cuáles elementos de conexión o relación de adaptación, conveniencia y uso real existía, si alguno, entre el sujeto expropiado y el remanente al momento de la expropiación, y;
> b) qué diferencia, si alg[u]na, existe entre el valor en el mercado del remanente antes y después de la expropiación".

*Resolución Enmendada*, *Apéndice*, en la pág. 675.

Así las cosas, el 26 de mayo de 2015, la Administración de Terrenos recurrió de la *Resolución Enmendada* mediante un recurso de *certiorari* ante el Tribunal de Apelaciones. La Corporación se opuso y arguyó que la controversia no podía disponerse sumariamente, por lo que no existía razón para expedir el recurso de *Certiorari*. Finalmente, el 6 de mayo de 2016, el Tribunal de Apelaciones notificó una *Sentencia* mediante la cual revocó la *Resolución Enmendada*. En extrema síntesis, el foro apelativo intermedio concluyó que la expropiación se

hizo de forma integral, por lo que no existía remanente alguno que requiriera ser compensado. Por consiguiente, determinó que no procedía la acción de daños por desmembración. Esta determinación se sustentó en que las parcelas en cuestión eran propiedades separadas y no contiguas.

Ante esta determinación, el 3 de junio de 2016, la Corporación presentó una petición de *certiorari* ante este Tribunal. En dicho recurso, la Corporación expuso que erró el Tribunal de Apelaciones: (1) al concluir que no existía un predio remanente por tratarse de predios no contiguos, y (2) al desestimar sumariamente la acción de daños por desmembración.

Por el contrario, en su alegato, la Administración de Terrenos sostuvo que el Tribunal de Apelaciones actuó correctamente, aunque por fundamentos distintos, al concluir que el caso no presenta un supuesto de predio remanente. Sobre este particular, la Administración de Terrenos arguyó que, durante la vista celebrada el 11 de marzo de 2014, el abogado de la Corporación admitió la inexistencia de un remanente.[3] Además, la Administración de Terrenos alegó que surgía de la sentencia sumaria, como hecho incontrovertido, que el predio expropiado servía como estacionamiento público y no como estacionamiento exclusivo. Por lo tanto, la Administración de Terrenos

---

[3] Por entender que la alegada admisión a la que alude la Administración es una conclusión de Derecho, no corresponde disponer de ella.

argumentó que el reclamo de la Corporación se circunscribía a la pérdida de un negocio como resultado de la expropiación del estacionamiento público, lo cual no era compensable. En fin, puntualizó que el presente caso no versaba sobre una acción de daños por desmembración.

Contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II

## A

La expropiación forzosa es concebida en nuestro ordenamiento jurídico como el poder soberano que reside en el Estado para adquirir el dominio de una propiedad sita dentro de sus límites territoriales. *Véase* Cynthia Torres Torres, *La expropiación forzosa en Puerto Rico* (2003), en las págs. 1-4. A la luz de la superioridad jerárquica de este poder, los derechos de propiedad están supeditados a éste. *Véase ACT v. 780.614m2*, 165 DPR 121, 130 (2005); *ELA v. Registrador*, 111 DPR 117 (1981); *ELA v. Rosso*, 95 DPR 501, 536 (1967). Sin embargo, nuestro ordenamiento jurídico regula el ejercicio de tal poder soberano para así evitar actuaciones abusivas o arbitrarias por parte del Estado. *Véase Municipio de Guaynabo v. Adquisición*, 180 DPR 206, 229 (2010).

A esos fines, la Sección 7 del Artículo II de la Constitución de Puerto Rico consagra el derecho al disfrute de la propiedad. *Véase* Art. II, sec. 7, Const.

ELA, 1 LPRA, Tomo 1. Además, la Sección 9 del Artículo II de nuestra Constitución limita el poder soberano del Estado al disponer que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley". Art. II, sec. 9, Const. ELA, 1 LPRA, Tomo 1. *Véase*, además, Art. 282 del Código Civil de Puerto Rico, 31 LPRA sec. 113.

De la redacción del precepto antes citado surge que, además de la exigencia del pago de una justa compensación, la incautación de la propiedad privada deberá realizarse conforme a la *Ley de expropiación forzosa de 1903*, 32 LPRA sec. 2901 *et seq.* y las Reglas de Procedimiento Civil; 32 LPRA Ap. V. *et seq. Véase*, además, *ACT v. 780.6141m2*, 165 DPR, en la pág. 130; *Amador Roberts v. ELA*, 191 DPR 268 (2014).

Mediante la justa compensación o justiprecio se pretende "colocar al dueño de la propiedad en una situación económica equivalente a la que se encontraba con anterioridad a la expropiación de su propiedad". *Amador Roberts v. ELA*, 191 DPR, en las págs. 278-79; *ELA v. Rexco Industries*, 137 DPR 683 (1994). La justa compensación debe incluir el valor de la propiedad al momento de la expropiación y los daños ocasionados. Dentro del espectro de los daños compensables se encuentran aquellos ocasionados al remanente de la propiedad expropiada. *Véase Amador Roberts v. ELA*, 191 DPR, en la pág. 279.

**B**

Una reclamación de daños por desmembración procede únicamente en escenarios donde se expropia parcialmente una propiedad. Es por ello que resulta indispensable identificar, en primer lugar, si el sujeto expropiado y el alegado predio remanente constituyen una finca íntegra. Asimismo, tal identificación es de vital importancia para delimitar los contornos del predio directamente perjudicado por la expropiación y la posterior adjudicación de la correspondiente compensación. A pesar de que los criterios para identificar la finca íntegra varían por jurisdicción, suelen coincidir en la evaluación de tres aspectos, a saber: (1) la unidad propietaria, (2) la unidad física y (3) la unidad de uso.[4]

Por lo general, la unidad propietaria evalúa si los predios a considerarse como una finca íntegra recaen sobre un mismo dueño.[5] Ahora bien, y en lo concerniente al presente caso, el requisito de unidad física o contigüidad responde al efecto consecuencialista que acarrea toda expropiación parcial; es decir, el surgimiento de un predio remanente. La relevancia de la unidad física es típica en los casos donde una construcción ferroviaria o

---

[4] *Véase* Condemnation 101: How To Prepare and Present an Eminent Domain Case, American Bar Association, ALI-ABA 229, 236 (2009).

[5] *Id*. en la pág. 236. ("Some states require strict compliance with this requirement, meaning that multiple parcels may only be considered part of a larger parcel if owned by the same person or entity.").

de carreteras interseca y divide una finca.[6] En estos escenarios la contigüidad es evidente. Bajo este umbral fáctico, en el cual la unidad física de los predios no estuvo en controversia, este Tribunal ha atendido diversas reclamaciones de daños por desmembración. Véase *ELA v. Fonalledas Córdova*, 84 DPR 573 (1962); *ELA v. Bravo,* 79 DPR 779 (1956); *Pueblo v. Suc. Rabell*, 72 DPR 574 (1951); *Pueblo v. Anadón*, 69 DPR 822 (1949); *Pueblo v. García*, 66 DPR 504 (1946).[7] Así, en el contexto de una revisión de la compensación, este Foro expuso que "[l]os daños al remanente de una finca expropiada se miden generalmente por la depreciación en valor de dicho remanente como consecuencia de la incautación. Para que puedan concederse estos daños **ordinariamente** se requiere que las propiedades –la expropiada y el remanente- sean contiguas." *Fonalledas Córdova*, 84 DPR, en la pág. 590 (énfasis suplido). Por lo tanto, aunque de ordinario se requiere la contigüidad, ese criterio puede ceder cuando existe un uso integrado entre las parcelas separadas.

Precisamente, el caso emblemático sobre este asunto es *Baetjer v. U.S.*, 143 F.2d 391 (1st Cir. 1991), cuyos hechos se suscitaron en Puerto Rico. La empresa Eastern Sugar Associates era dueña de varias parcelas no contiguas destinadas a la producción de azúcar. La parcela sita en

---

[6] *Véase*, e.g. *The American Railroad Company of Porto Rico v. Quiñones*, 18 DPR 745 (1912).

[7] Cabe destacar que las controversias de los casos citados se circunscriben al cómputo del justiprecio.

Vieques fue expropiada por el gobierno de Estados Unidos para fines militares. Ante esto, la empresa instó una reclamación de daños por desmembración basándose en que la mencionada expropiación depreció el valor de la parcela ubicada en la Isla Grande. En síntesis, el Tribunal de Apelaciones de Estados Unidos para el Primer Circuito concluyó que era válida dicha reclamación a pesar de que ambos predios estaban físicamente desunidos.[8] Sobre la falta de contigüidad, el foro federal dispuso lo siguiente:

> Neither does it wholly depend upon whether holdings are physically contiguous. Contiguous tracts may be 'separate' ones if used separately and tracts if physically separated from one another may constitute a 'single' tract if put to an integrated unitary use or even if the possibility of their being so combined in use 'in the reasonably near future' 'is reasonably sufficient to affect market value'.

*Baetjer v. U.S.*, 143 F.2d 391, 394-95 (1st Cir. 1991) (citas omitidas).

De esta forma, se estimó que la unidad de uso era un factor crucial en la identificación de lo que constituía una finca íntegra. Tradicionalmente, dicho criterio

---

[8] *Véase* Emine*nt Domain: Unity or Contiguity of Separate Properties Sufficient to Allow Damages for Diminished Value of Parcel Remaining after Taking of Other Parcel*, 59 A.L.R. 4th 308 § 2[a] (1988) ("Thus, many courts have held that lands not actually touching were nevertheless contiguous. As noted in Baetjer v. United States (1944, CA1 Puerto Rico) 143 F2d 391, *cert. den.* 323 US 772, 89 L Ed 618, 65 S Ct 131, contiguous tracts of land may be "separate" ones if used separately, and tracts physically separated from one another may constitute a "single" tract if put to an integrated unitary use.").

analiza si el uso entre los predios es el mismo o es uno integrado. *Véase* 4A *Nichols on Eminent Domain* sec. 14B.03(1).

Además, como muestra de que el requisito de unidad física no es uno categóricamente excluyente del criterio de unidad de uso, la profesora Cynthia Torres Torres señala que, para identificar la finca íntegra, es necesario analizar si "se trata de una sola finca unida en su totalidad por sus **usos o físicamente**". Torres Torres, *supra*, en la pág. 173 (énfasis suplido). De igual forma, la profesora puntualiza que:

> En los casos de daños por desmembración (*severance damages*) se deben observar los usos a que se dedicaba la propiedad antes de ser expropiada y aquellos que están disponibles para el remanente después . . . . El criterio de desintegración o separación de una propiedad basado en sus usos es importante tanto para adjudicarle valor a una propiedad como para identificar los daños sufridos.

*Id.* en la pág. 174.

Finalmente, la unidad física es requerida como norma general, pero no es un requisito indispensable. Más allá de la contigüidad, la unidad de uso es el criterio mediante el cual se devela la interdependencia existente entre los predios; relación que a fin de cuentas es el hecho que activa el derecho a reclamar una compensación por los daños ocasionados al predio remanente.[9]

---

[9] Véase Eminent *Domain: Unity or Contiguity of Separate Properties Sufficient to Allow Damages for Diminished Value of Parcel Remaining after Taking of Other Parcel*, 59

**III**

Conforme a los hechos reseñados, el presente caso requiere determinar si la contigüidad entre el estacionamiento y el Edificio Pesquera constituye un requisito indispensable para que la Corporación pueda reclamar una compensación por los alegados daños ocasionados al remanente como resultado de la expropiación. Como se indicó, el foro apelativo intermedio revocó el dictamen del foro primario y concluyó que, en virtud de la falta de contigüidad entre ambos predios, la acción de daños por desmembración era improcedente en derecho y, por tanto, debía ser desestimada.

Al amparo del estado de Derecho previamente discutido, la ausencia de contigüidad entre los referidos predios no es óbice para que la Corporación pueda incoar una acción de daños por desmembración. Como se explicó, el criterio de unidad física no es indispensable cuando la parte con interés logra probar que entre el sujeto expropiado y el predio remanente –aun no siendo contiguos– poseen una relación de interdependencia por su uso. De esta manera, la unidad de uso es un criterio alternativo mediante el cual se puede identificar la finca íntegra; cimiento para que proceda una reclamación de daños por

---

A.L.R. 4th 308 § 2[b] (1988). ("One of the more important factors in the unity-separateness issue is the degree of interdependence of the parcels, lots, or tracts of land involved, especially where the nature of the divisions in the land are more substantial than mere lot lines. The greater the interdependence between the parts, the greater the likelihood of a finding of unity.").

desmembración tras una expropiación parcial. Por lo tanto, erró el Tribunal de Apelaciones al determinar que en el presente caso no existe un predio remanente al considerar únicamente el factor de falta de contigüidad física entre las parcelas en cuestión y desestimar sumariamente la causa de acción de daños por desmembración. Tal y como razonó el foro primario, la controversia planteada requería celebrar un juicio en su fondo para dirimir la procedencia de esta causa de acción y evaluar los méritos de los argumentos relacionados con la interdependencia de uso entre las parcelas y los efectos de la expropiación parcial en el remanente.

## IV

Por los fundamentos que anteceden, revocamos al Tribunal de Apelaciones y reinstalamos el dictamen del Tribunal de Primera Instancia para que continúen los procedimientos conforme a lo aquí dispuesto.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Administración de Terrenos de
Puerto Rico

    Recurridos

        v.               **Núm.** CC-2016-0536

Corporación Pesquera Henares,
Inc.

    Peticionaria

SENTENCIA

En San Juan, Puerto Rico a 21 de agosto de 2018.

Por los fundamentos expuestos en la Opinión que antecede, revocamos al Tribunal de Apelaciones y reinstalamos el dictamen del Tribunal de Primera Instancia para que continúen los procedimientos conforme a lo aquí dispuesto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García concurre con el resultado sin opinión escrita.

           Juan Ernesto Dávila Rivera
        Secretario del Tribunal Supremo